488 A.2d 622

**Robert J. WALDER, individually and jointly, and Joseph Walder, individually and jointly, and McCarrie Schools, Inc., Appellants,**

**v.**

**William LOBEL, individually and t/a National School of Health Technology and National School of Health Technology.**

**Robert J. WALDER and Joseph Walder, individually and jointly, and McCarrie Schools, Inc.**

**v.**

**William LOBEL, individually and t/a National School of Health Technology and National School of Health Technology, Appellants.**

Superior Court of Pennsylvania.

Argued Aug. 22, 1984.

Filed Feb. 15, 1985.

---

Keith S. Erbstein, Philadelphia, for appellants (at 1108) and appellees (at 1114).

Jeremy T. Ross, Philadelphia, for appellants (at 1114) and appellees (at 1108).

Before McEWEN, OLSZEWSKI and HOFFMAN, JJ.

HOFFMAN, Judge:

Both parties have appealed from the lower court's April 7, 1983 order which granted defendants a new trial, but denied their motions for judgment n.o.v. and in arrest of judgment. For the reasons stated herein, we modify in part and affirm in part.

Plaintiffs, Robert J. Walder and Joseph Walder, are the owners and operators of plaintiff McCarrie Schools, Inc. (McCarrie School), a private dental technology school. Defendant William Lobel is the owner and operator of defendant National School of Health Technology (National School), a competing dental technology school. On August 30, 1973, plaintiffs filed a defamation action against defendants. After defendants filed preliminary objections to the complaint, plaintiffs filed an amended complaint. Defendants' preliminary objections to the amended complaint were sustained and, on July 15, 1977, plaintiffs filed a second amended complaint. On November 14, 1977, the lower court, per Judge Smith, dismissed defendants' preliminary objections to the first and second causes of action of the second amended complaint.[1] Subsequently, defendants filed a motion for summary judgment based upon the legal insufficiency of the second amended complaint. The lower court, per Judge Chalfin, considered this motion a motion for judgment on the pleadings and denied it on June 10, 1982. Following a June 10–22 trial, the jury found defendants liable and awarded plaintiffs $500,000 in compensatory damages and $450,000 in punitive damages. On July 15, 1982, defendants filed motions for a new trial, judgment n.o.v., and arrest of judgment. The lower court, in an April 7, 1983 order and opinion, granted the motion for a new trial based upon an erroneous jury charge and an excessive verdict; the remaining motions were denied. These appeals followed.

Before turning to the parties' contentions, we must first examine the defamatory communications in question, namely, several letters purportedly sent by students but actually sent by defendant Lobel to discredit plaintiffs. The "West" letter, dated January 22, 1973, was sent to the Veterans Administration (VA) in Philadelphia and ostensibly signed by Robert A. West, a veteran and graduate of McCarrie School. In the letter, West allegedly complained about the

---

1. The court sustained preliminary objections to the third cause of action, which plaintiffs later withdrew. The case was tried under the second amended complaint.

poor quality of the education which he had received at McCarrie School, his rejections by various dental labs based upon his schooling, and his inability to obtain employment. He also requested VA approval to take a course at National School "so that I may become employable." The "Wheeler" letters, dated January 5, 1973, were typed on National School stationery and ostensibly signed by Brenda Wheeler, a student at National School. The signatures on the two letters are different. In these letters, Wheeler allegedly claimed that McCarrie School representatives repeatedly called her to try to convince her to transfer to McCarrie School and told her that McCarrie School had more teachers, better equipment, and guaranteed job placement while National School had "lousy teachers." According to the letters, McCarrie representatives also told Wheeler that National School had been disqualified by the Board of Health. The "Jones" letters, dated December 13, 1972, were also typed on National School stationery and were ostensibly from Sandra Jones, a student at National School. One letter was signed; the other was unsigned. These letters described Jones' visit to McCarrie School, during which plaintiff Walder allegedly slandered rival schools, suggested to Jones a "dishonest" method of getting into the school free, called Lobel "a crook" and National School a "fly-by-night school" and a "little hole-in-the-ground," and bragged about McCarrie School. Jones also allegedly wrote that, when she next visited National School, "my faith in private schools was reaffirmed" because defendant Lobel only told her about the advantages and opportunities offered at National School and did not discuss any other school.

The "West" letter was received by the VA on January 24, 1973. (N.T. June 15, 1982 at 3.127). On March 2, 1973, the VA forwarded the letter to Dr. Joseph Gavenonis of the VA section of the Pennsylvania Department of Education in Harrisburg, which maintains an approved list of veterans' programs. (*Id.* at 3.130–3.131). Without state approval, private trade schools cannot enroll veterans. (*Id.* at 3.166,

3.173). Dr. Gavenonis then sent the letter to James Kiernan, an employee of the Department in Philadelphia, who investigated the charges by visiting McCarrie School and speaking with plaintiff Walder. Kiernan concluded that the complaint was groundless, and no further action was taken by the Department on the matter. (*Id.* at 3.166–3.172).

At trial, Robert West testified that he had neither prepared nor dictated the "West" letter, and that he had never seen the letter until his deposition was taken for this case. (*Id.* at 3.18, 3.23). He also testified that, after graduating from McCarrie, he immediately obtained a position at a dental lab which he held for four years and that he has been continuously employed thereafter. (*Id.* at 3.8–3.9). He stated that he visited National School subsequent to his graduation to explore the possibility of advanced training, picked National for that purpose solely because of its location, and signed some VA forms during that visit. (*Id.* at 3.9–3.12). Defendant Lobel testified at trial that West gave him the information contained in the letter when he met with West to discuss a course at National School. (N.T. June 11, 1982 at 2.43, 2.68–2.73). However, at his deposition, Lobel had stated that he first became aware of the "West" letter only after it became a part of this case and that he did not have any recollection of ever speaking to West. (*Id.* at 2.49, 2.53, 2.76). At trial, plaintiff Joseph Walder testified that, as a result of the "West" letter, he was compelled to appear before the VA Board of Inquiry sometime in 1973 to defend McCarrie School and that this was a "frightening experience." (N.T. June 16, 1982 at 4.84). He also testified that, if he had lost state approval, he would have lost 34% of his students and been effectively put out of business. (*Id.* at 4.73–4.77).

The "Wheeler-Jones" letters were sent to the Pennsylvania Association of Private School Administrators (PAPSA), a trade association of private schools to which both parties belong. PAPSA also provides auxiliary services to the National Trade and Technical School Association, which has the power to grant accreditation to such schools on a

national level. Without accreditation, these schools could not get financial aid for their students. (*Id.* at 4.92). Plaintiff Joseph Walder was confronted with the "Wheeler-Jones" letters at a meeting of the PAPSA Board. Defendant Lobel was also present and used these letters to substantiate his charges of unethical practices on the part of plaintiffs. (*Id.* at 4.89–4.97). The Board questioned Walder for approximately one-and-a-half-to-two hours and then dismissed the case. (*Id.* at 4.97). At trial, defendant Lobel testified that these letters had been typed by one of his secretaries after Wheeler and Jones came to him and requested that they be written. (N.T. June 11, 1982 at 2.104–2.115, 2.146–2.147). Plaintiff Walder testified that all of the allegations contained in the letters were false. (N.T. June 16, 1982 at 4.98). Walder also testified that, as a result of the "Wheeler-Jones" letters, he became upset, frustrated, worried and could not function, N.T. June 16, 1982 at 4.98–4.99; he felt ridiculed and that his honesty had been unfairly questioned, N.T. June 17, 1982 at 5.47; and the income of McCarrie School substantially decreased and it lost its accreditation in 1975, N.T. June 17, 1982 at 5.46–5.47.

Also at trial, Bernard Bernstein, a National School employee in advertising and public relations, N.T. June 15, 1982 at 3.62, identified the letters in dispute as similar in "language" and "tone" to other letters he had been given by defendant Lobel to edit. (N.T. June 15, 1982 at 3.64–3.79). He also testified that, at Lobel's request, he had edited the "West" letter although he had never met West himself. (*Id.* at 3.66–3.67).

■ Plaintiffs challenge the order granting a new trial, arguing that the lower court erred in finding that (1) the jury charge in question was erroneous and (2) the damages award was excessive. On June 22, 1982, the court charged the jury regarding the burden of proof on the issue of the truth or falsity of the communications in dispute, as follows:

Also, the defendants have the burden of establishing the truth of the communications which are claimed to be defamatory or libelous.

The defendant has the burden of proving the truth. If the defendant proves that they are true, they are not libelous.

\*    \*    \*    \*    \*    \*

The defendant, Mr. Lobel and the National School have the burden of proving that these allegations in those statements were true.

(N.T. June 22, 1982 at 8.26–8.27). In considering defendants' post-trial motions, the court below determined that these instructions were incorrect, relying upon *Dunlap v. Philadelphia Newspapers, Inc.,* 301 Pa.Superior Ct. 475, 448 A.2d 6 (1982), *alloc. denied.*[2] We disagree. Our Supreme Court's recent decision in *Hepps v. Philadelphia Newspapers, Inc.,* 506 Pa. 304, 485 A.2d 374 (1984), conclusively held that 42 Pa.C.S.A. § 8343(b)(1), which places the burden of proving the truth of the defamatory communication upon the defendant in a defamation action, is not unconstitutional. The Court stated: "[I]n a libel suit brought by a private individual for compensatory damages resulting from the defamatory material, the presumption of falsity remains and the defendant has the option of proving truth as an absolute defense to the action." *Id.,* 506 Pa. at 525, 485 A.2d at 387. Thus, we hold that the charge in the instant case was correct and, accordingly, find the lower court's grant of a new trial on this ground improper.

The lower court also found that the damages awarded by the jury were excessive. "Under Pennsylvania law, a defamation plaintiff may recover damages for injury to reputation, for any special harm he may have suffered,

2. The lower court also found that, because *Dunlap* (which the court believed effected a change in the law) was decided after the instant trial and while post-verdict motions were pending, defendants' failure to take specific exception to the charge at trial did not result in waiver of the issue. *See Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974). Because we find the jury charge correct, however, we need not resolve this waiver question.

and for emotional distress or bodily harm." *Marcone v. Penthouse International, Ltd.*, 577 F.Supp. 318, 332 (E.D. Pa.1983). "General damages are given to compensate the plaintiff for harm for which the defamatory statement is assumed to have caused his or her reputation." *Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 473, 273 A.2d 899, 920 (1971). "The purpose of punitive damages is to punish wrongful conduct and to deter its repetition." *Marcone v. Penthouse International, Ltd.*, *supra* at 335. To justify punitive damages, the plaintiff must show actual malice on the part of the defendant. *Feld v. Merriam*, 506 Pa. 383, 395–396, 485 A.2d 742, 747–748 (1984); *Hepps v. Philadelphia Newspapers*, *supra*, 506 Pa. at 329–330, 485 A.2d at 388–389. "The duty of assessing damages is within the province of the jury and should not be interfered with by the court unless it clearly appears that the amount awarded resulted from caprice, prejudice, partiality, corruption or some other improper influence." *Tonik v. Apex Garages, Inc.*, 442 Pa. 373, 378, 275 A.2d 296, 299 (1971). If the verdict bears a reasonable resemblance to the damages proven, the court should not substitute its judgment for that of the jury. *Mohler v. Worley*, 179 Pa.Superior Ct. 56, 60, 116 A.2d 342, 344 (1955). Under Pennsylvania law, the jury's award of punitive damages should not be disturbed by the court "unless it is so grossly excessive as to offend the conscience of the court and to shock its sense of justice." *Marcone v. Penthouse International, Ltd.*, *supra* at 335.

Here, the lower court found that "[t]he jury's award of $500,000.00 compensatory damages and $450,000.00 punitive damages ... shock[ed] [its] conscience and sense of justice." (Lower Court Opinion at 11). The court below, in reviewing the evidence in the instant case, emphasized the following: (1) with respect to the "West" letter, there was no evidence presented that the Department of Education took any further action or that McCarrie School lost its approval; (2) with respect to the "Wheeler-Jones" letters, the PAPSA Board dismissed the matter after questioning

plaintiff Walder; and (3) there was no evidence presented that McCarrie School lost any students, potential students or potential revenue. Therefore, the lower court concluded that the amount of damages awarded by the jury "resulted from some prejudice or other improper partiality." (Lower Court Opinion at 15). The court stated:

> The only possible explanation, in the opinion of the Court, for the excessive amount of damages awarded on these facts is that the jury wished to punish Mr. Lobel because his testimony was so incredible throughout the trial, particularly regarding his net worth. (n.t. 6.145–6.211.) It is also apparent that the jury was annoyed by the obvious lack of preparation of Mr. Lobel's attorney and the incompetent manner in his trial technique.

(Lower Court Opinion at 15 n. 3).

■ We initially note that the lower court apparently overlooked the unrebutted testimony of plaintiff Joseph Walder that, as a result of the letters, the income of McCarrie School substantially decreased and it lost its accreditation. *See* N.T. June 17, 1982 at 5.46–5.47. However, we do not believe that this additional evidence is enough to warrant our overturning the lower court's finding of excessive verdict. "As to reviewing on appeal the grant or refusal of a new trial, we will not reverse the lower court's action 'absent an abuse of discretion or error of law which controlled the outcome of the case.'" *McDevitt v. Terminal Warehouse Co.*, 304 Pa.Superior Ct. 438, 441–442, 450 A.2d 991, 993 (1982) (citation omitted). *Accord, Tonik v. Apex Garages, Inc., supra* 442 Pa. at 378, 275 A.2d at 299; *Corabi v. Curtis Publishing Co., supra* 441 Pa. at 472–73, 273 A.2d at 919–20; *McNair v. Weikers*, 300 Pa.Superior Ct. 379, 385, 446 A.2d 905, 908 (1982).

In reviewing the lower court's action to determine whether an abuse of discretion has occurred, we recognize that "[a]n abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overriden [sic] or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, preju-

dice, bias or ill-will, as shown by the evidence on the record, discretion is abused."

*Straub v. Tyahla,* 274 Pa.Superior Ct. 411, 414, 418 A.2d 472, 474 (1980) (citation omitted). In applying the above-defined standard to the instant case, we cannot say, after reviewing the record, that the lower court abused its discretion in finding the verdict excessive. The court properly applied the law on damages and reached a judgment which we do not find manifestly unreasonable, or the result of partiality or prejudice. Therefore, we are compelled to remand this case for a new trial on the issue of damages.[3]

■ Next, defendants challenge the lower court's denial of their motion in arrest of judgment, arguing that plaintiffs' second amended complaint (1) was so vague and indefinite as to be defective as a matter of law and (2) stated a new cause of action after the statute of limitations had expired. We find no merit in these contentions. "Generally, a defamatory action must allege: 1) the defamatory character of the communication; 2) publication; 3) that the communication refers to the plaintiff; 4) the third party's understanding of the communication's defamatory character; and 5) injury." *Raneri v. DePolo,* 65 Pa. Common-

---

**3.** Plaintiffs also argue that the award of punitive damages was justified by the evidence and that punitive damages need not bear a relationship to the compensatory damages, citing *Rhoads v. Heberling,* 306 Pa.Superior Ct. 35, 451 A.2d 1378 (1982). Therefore, they request, alternatively, that the punitive damages award be reinstated and a new trial be limited to the issue of compensatory damages only. Because the law is unclear as to the relationship between compensatory damages and punitive damages, we decline to do this. *See Marcone v. Penthouse International Ltd.,* 577 F.Supp. 318, 335 (E.D.Pa.1983) ("Pennsylvania law appears to be in a state of change as to whether punitive damages must be proportionate or reasonably related to compensatory damages."); *Feld v. Merriam,* 314 Pa.Superior Ct. 414, 437, 461 A.2d 225, 237 (1983), *remanded for new trial,* 506 Pa. 383, 485 A.2d 742 (1984) (punitive damages are excessive when they are disproportionate to the amount of compensatory damages awarded); *Rhoads v. Heberling,* 306 Pa.Superior Ct. 35, 44–45, 451 A.2d 1378, 1383 (1982) (trial court did not err when it instructed jury that amount of punitive damages awarded need not bear any relationship to the actual damages awarded); *Golomb v. Korus,* 261 Pa.Superior Ct. 344, 346, 396 A.2d 430, 431 (1978) (punitive damages may not be disproportionate to compensatory damages).

wealth Ct. 183, 186, 441 A.2d 1373, 1375 (1982). *See also* 42 Pa.C.S.A. § 8343(a) (elements of a defamation action which plaintiff has the burden of proving); *Corabi v. Curtis Publishing Co., supra,* 441 Pa. at 441–42, 273 A.2d at 903–04 (defamation defined). "The sufficiency of the complaint is governed by the facts alleged therein." *Gross v. United Engineers & Constructors, Inc.,* 224 Pa.Superior Ct. 233, 235, 302 A.2d 370, 371 (1973), *alloc. denied.*

Here, after reviewing the second amended complaint, we find that the allegations contained therein are specific, definite and sufficient to state a cause of action in defamation.

■ A defamation action must be commenced within one year. 42 Pa.C.S.A. § 5523(1). "The general rule is that an amendment will not be permitted after the running of the statute of limitations if it introduces a new cause of action, ..., but if the amendment would only amplify or enlarge the existing cause of action, it will be permitted." *Sanchez v. City of Philadelphia,* 302 Pa.Superior Ct. 184, 187, 448 A.2d 588, 589 (1982) (citations omitted). "A new cause of action exists if it is based on an entirely different theory, ... or is based upon different relations between the parties. Under such circumstances both the plaintiff's proof and the defenses available to the defendant would be different." *Goodrich Amram 2d* § 1033:4.1, at 369–70.

> Amendments which merely restate in a more distinct form the grounds set forth originally as the basis of the plaintiff's cause of action ... or merely vary the cause of action, as originally stated, so that the subject matter remains the same, may be made at any time, even after the statute of limitations has run on the claim sued for.

*Hoffman v. Hibbs,* 235 Pa.Superior Ct. 470, 474, 344 A.2d 546, 548 (1975) (*en banc*); *see also Goodrich Amram 2d* § 1033:4.1, at 372–73.

Here, after comparing the original complaint with the second amended complaint, we do not find that the second amended complaint stated a new cause of action. Both alleged a cause of action in defamation involving the same

letters published by defendant Lobel to third parties result-ing in detriment to plaintiffs. The second amended com-plaint did not allege an entirely different theory or different relations between the parties, but only amplified the exist-ing cause of action which was sufficiently stated in the original complaint. Therefore, we hold that the lower court properly denied defendants' motion in arrest of judgment.

Accordingly, we modify that portion of the April 7, 1983 order granting a new trial by limiting the new trial to the issue of damages; otherwise, we affirm the denial of the motions for judgment n.o.v. and in arrest of judgment.

Modified in part, affirmed in part, and remanded for a new trial solely on the issue of damages. Jurisdiction is not retained.