## Kotchin v. Simpkins

*Robert A. Gonos* and *John H. Kennedy,* for plaintiff.

*Patrick E. Dougherty,* for defendant S&B Restaurant Inc.

DALESSANDRO, *J.*, September 10, 1986—
### NATURE OF PROCEEDINGS

This matter is before the court on the motion for post-trial relief filed by S&B Restaurant Inc., a

Pennsylvania corporation operating as Woodlands, an Inn (hereinafter referred to as "Woodlands").

## HISTORY AND FACTS

At approximately 9:00 p.m. on September 25, 1981, defendant Donald T. Simpkins met two friends, Bernard and Annette Norieka, at the Left Bank Lounge in the Woodlands; there, Simpkins drank five to seven scotch and water cocktails. Approximately two and one half to three and one half hours later, Simpkins and the Noriekas walked to the "25th Hour," another location in the Woodlands. Simpkins continued to consume alcohol during the half hour he was in the 25th Hour.

Ultimately, Simpkins exited the Woodlands, got into his car alone, and left the Woodlands' parking lot by turning right onto Route 315. Immediately thereafter, Simpkins was involved in an automobile accident with a 1978 Volkswagon bus that was owned by Theodore J. Wiatrowski and Virginia Wiatrowski; in addition to the Wiatrowskis, Cheryl Telecholski and Charlotte Plummer were passengers in the Volkswagon bus. As a result of the collision, Mr. Wiatrowski and Ms. Plummer were killed, and Mrs. Wiatrowksi and Ms. Telecholski were severely injured.

At trial, commencing June 10, 1985, counsel for plaintiff Kotchin argued that the collision occurred because of Simpkins' intoxication and that the Woodlands was also liable for damages in that it continued to serve Simpkins alcoholic beverages after he had become visibly intoxicated. A jury returned verdicts against both Simpkins and the Woodlands, deciding that Simpkins' negligence in driving and the Woodlands' negligence in serving Simpkins while he was visibly intoxicated caused the injuries which were the subject of the lawsuit.

The jury additionally found that the Woodlands should be punished by the imposition of punitive damages, in the amount of $250,000.

The Woodlands' motion for post-trial relief, which requests a judgment non obstante veredicto, a new trial, and a remittitur from the jury verdict, was filed on June 21, 1985. Following the transcription of testimony, oral argument was heard by this Court on February 28, 1986; at that time, counsel for the Woodlands indicated to the court that the Woodlands was seeking relief on the issue of punitive damages only. Accordingly the remaining arguments will not be considered.

## DISCUSSION AND LAW

Citing Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1277 (3rd Cir. 1979), our Superior Court has determined the following, as regards, punitive damages:

"The question . . . , in tort actions generally, is whether there has been sufficiently aggravated conduct contrary to the plaintiffs' interests, involving bad motive or reckless indifference, to justify the special sanction of punitive damages. That sanction serves the dual function of penalizing past conduct consituting an aggravated violation of anothers [sic] interest, and of deterring such behavior in the future." Delahanty v. First Pennsylvania Bk., N.A., 318 Pa. Super. 90, 128, 464 A.2d 1243, 1262-1263 (1983). In cases where an award of punitive damages is proper, the decision of whether to award punitive damages and the amount to be awarded are within the discretion of the fact finder. See Focht v. Rabada, 217 Pa. Super. 35, 268 A.2d 157 (1970).

The courts of Pennsylvania have embraced the guideline of the Restatement (Second) of Torts,

§908.* Feld v. Merriam, 506 Pa. 383, 485 A.2d 742 (1984). In its entirety, Section 908 provides:

"(1) Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future.

(2) Punitive damages may be awarded for conduct that is ourageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant." According to the Feld court, "[p]unitive damages must be based on conduct which is 'malicious,' 'wanton,' 'reckless,' 'willful,' or 'oppressive' . . ." (citations omitted; ellipsis in original) Feld at 395, 485 A.2d at 747-748.

Citing, inter alia, Chambers v. Montgomery, 411 Pa. 339, 192 A.2d 355 (1963), the Feld court also directs that one also must look to the act itself together with all the circumstances including the motive of the wrongdoers and the relations between the parties. Our Supreme Court concluded as follows, pertinent to the issue of punitive damages:

"The state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious.

. . .

---

*Restatement (Second) of Torts, §908 (1967) is in all material parts identical to Restatement of Torts, §908 (1939). Feld v. Merriam, 314 Pa. Super. 414, 461 A.2d 225 (1983), ftnt. 15, revs'd on other grounds 506 Pa. 383, 485 A.2d 742 (1984).

In deciding whether to impose punitive damages a court should not look to the third party's criminal conduct, which in this case was truly outrageous; a court should not look at the end result, which in this case also was outrageous; rather, the court should examine the actor's conduct." Feld at 396, 485 A.2d at 748. Based on the record presently before this court, as a matter of law, the jury could not conclude that the Woodlands' conduct was outrageous; error was committed when the issue of punitive damages was submitted to the jury. See Feld at 396, 485 at 748.

The record before us reveals that at the scene of the accident, during their investigations, Patrolman Joseph R. Wilk and Sergeant Leonard Sarnick of the Plains Township Police Department observed that Simpkins was "under the influence" and "totally intoxicated." Simpkins himself testified that the only alcohol which he consumed on September 25, 1981 was served to him at the Woodlands. Simpkins recalled that he had a minimum of three or four drinks of Dewar's Scotch and water in the Left Bank Lounge, plus one more drink in the 25th Hour, which he purchased himself.

Bernard Norieka, one of Simpkins' companions at the Woodlands, tesified that while his party was in the 25th Hour, he observed that Simpkins was visibly intoxicated; however, this observation was made after Simpkins had ordered a drink at that bar. However, on cross-examination, Mr. Norieka stated that although he knew that Simpkins had more than one drink in the 25th Hour, he only remembered seeing Simpkins purchase the one drink ordered at the time the party entered the 25th Hour. In fact, when Simpkins purchased the drink in the 25th Hour, he did not appear to Mr. Norieka to be intoxicated. Mr. Norieka testified that he believed that Simpkins pro-

cured another drink, but he did not see any employee of the Woodlands serve him a drink after the first one in the 25th Hour.

Annette Norieka similarly testified to the events of the evening of September 25, 1981. She stated that while she, her husband, and Simpkins were together in the 25th Hour, she observed that Simpkins only ordered one drink; she and Mr. Norieka left the 25th Hour after awhile, and "Mr. Simpkins followed us shortly thereafter, [and] he had another fresher drink in his hand." During the five to 10 minutes in which Simpkins and the Noriekas were separated, Simpkins' appearance and conduct changed radically, and "[h]e was really staggering then at that point." As regards Simpkins' physical appearance when he ordered his first drink in the 25th Hour:

"Q. When Donald was served or was given the one drink that you know he had when he was at the 25th Hour, having been with him that evening, was there anything about his conduct which would have made you suspicious or would have indicated to you that he was intoxicated to you at that time?

A. In the 25th Hour?

Q. When he got his first drink.

A. No, sir."

Plaintiffs further argue that the Woodlands' conduct was "recklessly indifferent" in that there was no security officer at the entrance to the 25th Hour on the subject evening, and because the Woodlands had no written policies for its employees pertinent to the service of alcoholic beverages to patrons. However, neither the Pennsylvania Liquor Code, 47 P.S. §1-101, et seq., particularly at 47 P.S. §4-493, nor Pennsylvania case law require, under circumstances such as those presently before this Court, a licensed establishment to do more than refrain from

serving a visibly intoxicated person. Although the ultimate outcome of Mr. Simpkins' alcoholic consumption at the Woodlands was tragic, the conduct on the part of the Woodlands upon which plaintiffs base their claim for punitive damages does not rise to a level required by the law for such a claim.

An essential fact necessary to support a claim for punitive damages is that defendant's conduct must have been outrageous. The recent decision of Feld v. Merriam, supra, 506 Pa. 383, 485 A.2d 742 (1984), has been interpreted to require that "one should consider the defendant's conduct and not the results of an incident in determining outrageousness." Ellis v. Livelsberger, 35 D. & C.3d 375, 380 (1985). In Walder v. Lobel, 339 Pa. Super. 203, 488 A.2d 622 (1985), Feld is interpreted to stand for the rule of law that "[t]o justify punitive damages, the plaintiff must show actual malice on the part of the defendant." Walder at 211, 488 A.2d at 626. After careful consideration of the present record of testimony, together with all of the circumstances including the motive of the Woodlands and the relations between the parties, we must conclude that the evidence presented was insufficient to support a finding that the Woodlands' conduct was outrageous. Feld, supra, at 395-396, 485 A.2d at 748. On this record, as a matter of law, a jury could not conclude that the Woodlands' conduct was outrageous, and as such; error was committed when this issue was submitted to the jury. See Feld, supra. Accordingly, the award of punitive damages must by vacated.

## ORDER

It is hereby ordered as follows:

(1) The motion for post-trial relief submitted by defendant S&B Restaurant, Inc., in the nature of a

motion for a judgment non obstante veredicto, is granted, as it pertains to the punitive damages verdict;

(2) The $250,000 verdict for punitive damages awarded to plaintiffs is vacated;

(3) Judgment is entered if favor of defendant S&B Restaurant, Inc., on plaintiff's claim for punitive damages;

(4) Based on representations made by counsel, no other issues in the motion for post-trial relief need be considered by this court.