563 A.2d 525

Ronald L. McCARTNEY, Appellant,

v.

DUNN & CONNER, INC., Andrew J. Conner and Robert
C. Ward, Appellees.

Superior Court of Pennsylvania.

Argued April 24, 1989.

Decided July 14, 1989.

Reargument Denied Sept. 1, 1989.

564

Robert Lesuer, Erie, for appellant.

Theodore O. Struk and Stephen M. Houghton, Pittsburgh, for appellees.

Before MONTEMURO, JOHNSON and CERCONE, JJ.

MONTEMURO, Judge:

This is a consolidated appeal, filed by Ronald L. McCartney, M.D., from two Orders entered by the Court of Common Pleas of Erie County on July 25, 1988. Under No. 01234 Pittsburgh 1988, the trial court granted appellees' motion for a partial summary judgment, filed initially on January 6, 1988. Under No. 01235 Pittsburgh 1988, the trial court granted appellees' motion for summary judgment, filed initially on April 27, 1988. Appellees are the law firm Dunn & Conner, Inc., and Andrew J. Conner and Robert C. Ward. Following a careful review of the extensive record in this case, we affirm the entry of summary judgment and the entry of partial summary judgment.

On October 15, 1986, the appellant filed a complaint, claiming that the appellees had been negligent in their legal representation of the appellant in a prior lawsuit which arose and was ultimately litigated in the state of Texas. In

an Opinion filed by the trial court on March 29, 1988, the court accurately sets forth the facts underlying the Texas lawsuit:

[Appellant] is a board certified radiologist. He left his practice in California in 1975 to become associated with Huguley Memorial Seventh–Day Adventist Medical Center, Inc. (hereinafter "Huguley"). At that time, the medical center was under construction. On August 25, 1976, [appellant] and Huguley executed a written agreement entitled "Provision of Radiology Services Agreement" which essentially provided that the [appellant] was being employed by Huguley to organize, supervise and operate a radiology department at Huguley. Article 9.02 of the agreement granted each party the right to terminate the agreement on ninety (90) days written notice to the other party.

On December 24, 1975, [appellant] signed three more documents—a Letter of Intention and two Notes. The thrust of these writings was that the hospital would advance living expenses to the [appellant] during the period of time that the hospital was being constructed and the radiology department was being organized, and that once the radiology unit was operational, the [appellant] would pay back to Huguley the sum of the advances made.

The hospital opened in early 1977 and in September of that year, the governing board of the hospital gave [appellant] a ninety-day notice of termination, as required by the Radiology Services Agreement. [Appellant] left the employ of the hospital in December of 1977. In November of 1978, he brought suit against Huguley alleging that: (1) Huguley had breached an oral agreement to employ the [appellant] as head of the radiology unit for at least five (5) years; (2) that Huguley breached the medical staff bylaws by terminating the [appellant] without notice and a hearing; and, (3) that the wrongful discharge had caused the [appellant] to be defamed. Huguley coun-

terclaimed for the loans it had made to the [appellant] to subsidize him prior to the opening of the hospital. Op. of Trial Court, March 29, 1988, at 1–3.

In the instant appeal, the parties do not dispute the fact that in October of 1978, the appellant contacted the appellees regarding his Texas litigation. At that point in time, appellant's Texas counsel, Timothy Kelly, Esquire, had asked to be relieved from representing him in the lawsuit against Huguley. Appellant alleges in his complaint against the appellees that an attorney-client relationship was established at the initial October 1978 meeting and that this relationship continued through to the conclusion of the Texas litigation. R.R. at 12a. Appellees, on the other hand, claim that no attorney-client relationship arose until February of 1981, when an attorney in appellee law firm Dunn & Conner, Robert C. Ward, Esquire, agreed to appear on behalf of the appellant in the impending Texas trial. R.R. at 62a. Prior to this time, appellees aver that appellant was handling the Texas litigation *pro se*, and that appellees had agreed to merely assist the appellant in securing Texas counsel. R.R. at 63a. It is undisputed that Texas counsel, Jeffrey Walker, Esquire, was employed in November of 1979. Attorney Walker thereafter tried the defamation action in November of 1979. The defamation action was resolved unfavorably to appellant. Attorney Walker was dismissed as counsel in January of 1980. R.R. at 13a. Appellant was then represented by Robert C. Ward at the trial on the remaining claims against Huguley. After three days of trial, the trial court in Texas entered a judgment of non-suit against appellant on his claims against Huguley and, after deliberation on Huguley's counterclaim, the jury returned a verdict in favor of Huguley in the amount of $95,000.00. This result was affirmed by the Fifth Circuit Court of Appeals in May of 1981.

 We will first address the trial court's disposition of appellees' motion for partial summary judgment (No. 01234 Pittsburgh 1988). Pursuant to Rule 1035 of the Pennsylvania Rules of Civil Procedure, summary judgment is to be

entered only in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b). In determining whether a summary judgment should be granted, the trial court must examine the record in the light most favorable to the nonmoving party. *Johnson v. Baker*, 346 Pa.Super. 183, 185, 499 A.2d 372, 373 (1985) (citation omitted). The trial court in the present case held that appellees' legal representation of appellant as to the theories of liability actually raised by the appellant in his complaint against Huguley was not negligent as a matter of law. The trial court correctly recognized that when a "... plaintiff alleges that [a] defendant lawyer negligently provided services to him or her as a plaintiff in the underlying action, he or she must establish that he or she would have recovered a judgment in the underlying action in order to be awarded damages in the malpractice action, which are measured by the lost judgment." *Duke & Co. v. Anderson*, 275 Pa.Super. 65, 71, 418 A.2d 613, 616 (1980) (citation omitted). Appellant was precluded by Texas law from maintaining an action against Huguley for failure to follow medical staff bylaws. *See Weary v. Baylor University Hospital*, 360 S.W.2d 895 (Tex.Civ.App.1962). In regard to the appellant's claim that Huguley breached an oral contract to employ him for a minimum five-year term, it is clear that the appellant failed to prevail on this claim not because of any legal malpractice but because of a lack of evidence. The Fifth Circuit Court of Appeals affirmed the directed verdict in favor of Huguley on this claim after noting that appellant "... failed to produce any evidence of the alleged [oral] agreement...." R.R. at 96a. The Court of Common Pleas of Erie County aptly recognized that "no amount of care exercised by the [appellees] in their role as legal counsel could have produced evidence that does not exist." Op. of Trial Court, March 29, 1988, at 5–6.

Appellant further contends that the partial summary judgment motion should not have been granted because

appellees were negligent in failing to advise him to amend his complaint against Huguley to include a "tortious interference with prospective and existing contractual relations" cause of action. Appellees contend that appellant failed to raise this particular contention of legal malpractice in his complaint, filed October 15, 1986, and that the Statute of Limitations has now run, thus preventing an amendment of the complaint. Moreover, appellees contend that even if this claim of legal malpractice had been included in a timely manner in appellant's original complaint, appellees are entitled to judgment as a matter of law because by the time the appellees were handling the Texas lawsuit, the Statute of Limitations had already run on a tortious interference cause of action. Brief for Appellees at 17. Finally, appellees argue that because Huguley was legally justified in terminating Dr. McCartney, there is no viable claim for tortious interference with contractual relations under Texas law.

■ Our review of the record reveals that the appellant did file a motion to amend his complaint against appellees herein on July 8, 1988, seeking to specifically plead that the appellees' failure to raise different theories of liability in the Texas action constituted legal malpractice. R.R. at 265a. The trial court failed to rule on appellant's motion to amend the complaint. Our Supreme Court has held that:

> ... the right to amend should be liberally granted at any stage of the proceedings unless there is an error of law or resulting prejudice to an adverse party.... An amendment introducing a new cause of action will not be permitted after the Statute of Limitations has run in favor of a defendant.... This would constitute "resulting prejudice" to the adverse party. However, if the proposed amendment does not change the cause of action but merely amplifies that which has already been averred, it should be allowed even though the Statute of Limitations has already run.

*Schaffer v. Larzelere,* 410 Pa. 402, 406–407, 189 A.2d 267, 270 (1963). It was an abuse of discretion for the trial court to have refused to consider the motion to amend the com-

plaint. Appellant's proposed amendment is not a new cause of action, but an amplification of allegations of negligent legal representation which are a part of his original complaint. Appellant's complaint alleged *inter alia* as follows:

73. The acts and omissions of the Defendants, as described above, fell below the applicable standards of care owed by the Defendants to McCartney.

74. The Defendants failed to exercise on behalf of McCartney the skill, knowledge, diligence and judgment ordinarily possessed and employed by practitioners of the legal profession.

R.R. at 20a–21a. In *Connor v. Allegheny General Hospital*, 501 Pa. 306, 461 A.2d 600 (1983), the plaintiffs, in their complaint, had originally alleged that the hospital, acting individually and through its employees, was negligent:

a. In perforating the sigmoid colon during the performance of a barium enema procedure;

b. In perforating the sigmoid colon and causing extravasation of the barium into the abdominal cavity causing barium peritonitis;

\* \* \* \* \* \*

f. In otherwise failing to use due care and caution under the circumstances.

*Id.*, 501 Pa. at 308, 461 A.2d at 601. The plaintiffs in *Connor* later filed a motion to amend the complaint to include the following allegation:

4. After it became apparent or should have become apparent ... that barium with the accompanying intestinal contents had extravasated into the abdominal cavity, the necessary laparotomy and cleansing of the abdominal cavity ... was delayed improperly causing the barium and intestinal contents to remain within the abdominal cavity causing extensive peritonitis, formation of adhesions and a pericolic abscess.

*Id.*, 501 Pa. at 309, 461 A.2d at 602. The Supreme Court reversed a panel decision of this Court which had held that the proposed amendment was barred by the Statute of

Limitations because it set forth a new theory of liability. Our Supreme Court in *Connor* opined:

> ... In their original complaint, appellants did not merely allege that the barium enema had been negligently performed. Rather, appellants also alleged that appellee ... was negligent "[i]n otherwise failing to use due care and caution under the circumstances." Appellants' proposed amendment simply specifies the other ways in which appellee was negligent in this case.
>
> Since appellants' proposed amendment does not change the original cause of action, but rather amplifies it, the amendment would not result in any prejudice to appellee. In view of the policy that the right to amend should be liberally granted, and in view of the fact that the amendment in this case would not have worked a prejudice against appellee, it was an abuse of discretion for the trial court to refuse the proposed amendment, and it was error for the Superior Court to uphold the trial court's action.

*Id.*, 501 Pa. at 310–311, 461 A.2d at 602–603. *See also Walder v. Lobel*, 339 Pa.Super. 203, 488 A.2d 622 (1985) (second amended complaint in defamation action did not state a new cause of action which would have been barred by the Statute of Limitations where second amended complaint did not allege entirely different theory or different relations between parties, but only amplified existing cause of action which was sufficiently stated in original complaint).

▮▮▮ We are convinced that appellant's proposed amendment is not barred by the Statute of Limitations, because it is not a new cause of action, but merely an amplification of his original allegations of legal malpractice. However, we affirm the entry of partial summary judgment because, as a matter of Texas law, appellant cannot establish a cause of action for tortious interference with contractual relations.[1]

---

1. Additionally, we find no error in the trial court's initial determination that the facts as alleged by the appellant are insufficient to support a claim for punitive damages. The trial court determined

It is undisputed that Huguley, as well as the appellant, had a contractual right to terminate their relationship upon ninety days written notice. Thus, while Huguley's exercise of its valid contractual right may have had an impact on other contractual relationships or business relations of the appellant, Huguley's actions were not tortious under well established Texas law:

> Before recovery can be had for contract interference, it must be determined whether or not such interference was privileged or justified. Interference with contractual relations is privileged where it results from the exercise of a party's own rights or where the party possessed an equal or superior interest to that of the plaintiff in the subject matter.... The exercise of an absolute right or privilege protects from liability only if the right exercised is equal or superior to the right invaded. Enforcing or complying with one's own valid contract does not constitute unjustifiable interference with another's contract. An action to protect one's contractual right is also ordinarily justification for interference with another's contract.

*Maynard v. Caballero,* 752 S.W.2d 719, 721 (Tex.App.—El Paso 1988) (citations omitted). *See also V.M. Solis Underground Util. v. Laredo,* 751 S.W.2d 532 (Tex.App.—San

that "in the present case, the facts which plaintiff alleges entitle him to punitive damages are defendant Conner's advice that plaintiff should proceed with the lawsuit despite his knowledge of plaintiff's precarious financial situation, Conner's lack of preparation of the case until two weeks before trial and the defendant's involvement in litigation adverse to the plaintiff's radiology group at the same time that the defendants represented plaintiff. This conduct may be sufficient to support a finding of ordinary negligence on the part of one or all defendants; however, this court is not convinced that such conduct evidences the culpable state of mind that Pennsylvania requires in order for a jury to award punitive damages to plaintiff." Op. of Trial Court, March 29, 1988, at 8. We find that the trial court correctly held that there are insufficient facts alleged by the appellant to support a claim for punitive damages. In view of the fact that the amendment proposed by the appellant will not alter this aspect of the instant case, appellant is precluded from seeking punitive damages upon remand.

Likewise, we affirm the trial court's holding that as a matter of law, appellant cannot pursue his claim for attorney fees.

Antonio 1988); *Marathon Oil Co. v. Sterner,* 745 S.W.2d 420 (Tex.App.—Houston [14th Dist] 1988).

■ We also affirm the trial court's entry of summary judgment (No. 01235 Pittsburgh 1988). Appellant claimed, with reference to Huguley's counterclaim for advance monies, that appellees had been negligent in failing to seek introduction of the deposition testimony of a William Wiist to the effect that, despite the express language of the documents signed by Huguley and the appellant, it was never intended that appellant would actually repay the advance monies. This claim of legal malpractice is meritless as a matter of law because such evidence is inadmissible under the Parol Evidence Rule. *See Conner v. May,* 444 S.W.2d 948 (Tex.Civ.App., 1969). Appellant's obligation to repay these sums was expressly and unambiguously set forth in the three, written contracts he signed with Huguley in December of 1973.

■ Finally, appellant's contention that the appellees were negligent because they failed to evaluate the settlement potential of the Huguley counterclaim is entirely speculative, and thus no cause of action for legal malpractice may be maintained. We note that Huguley's counterclaim was based upon written contracts signed by the appellant which expressly and clearly controlled his obligation to repay the monies advanced to him by Huguley. Whether or not Huguley had any reason to settle for an amount less than the jury ultimately awarded is anyone's guess, although we find the prospect less likely in view of the legal basis for the counterclaim. In any event, this Court has not allowed legal malpractice actions based upon speculations regarding settlement negotiations. *See Mariscotti v. Tinari,* 335 Pa.Super. 599, 485 A.2d 56 (1984) (whether appellant could have obtained a better settlement if her attorney had given her a correct evaluation of her husband's stock was speculative, thus defeating any cause of action for malpractice of the attorney negotiating the settlement).

For all of the foregoing reasons, we affirm the entry of partial summary judgment (No. 01234 Pittsburgh 1988) and the entry of summary judgment (No. 01235 Pittsburgh 1988).

Orders affirmed.