536 A.2d 1337

**Gustine J. PELAGATTI, Esq., Individually and Gustine J. Pelagatti, P.C., Appellant,**

v.

**Jill R. COHEN, Esq., Gregory M. Harvey, Esq., Morgan, Lewis & Bockius, Philadelphia National Bank, David H. Marion, Esq., Kohn, Savett, Marion & Graf, P.C. and Gregory T. Magarity, Esq., and Wolf, Block, Schorr & Solis–Cohen.**

Superior Court of Pennsylvania.

Argued June 8, 1987.

Filed Nov. 30, 1987.

Reargument Denied Jan. 20, 1988.

F. Emmett Fitzpatrick, Jr., Philadelphia, for appellant.
Jonathan Wheeler, Philadelphia, for Cohen, appellee.
Marc J. Sonnenfeld, Philadelphia, for Harvey, appellees.
James J. McCabe, Jr., Philadelphia, for Marion, appellees.
Bernard M. Borish, Philadelphia, for Magarity, appellees.

Before BROSKY, TAMILIA and JOHNSON, JJ.

BROSKY, Judge:

This is an appeal from an order sustaining preliminary objections, in the nature of a demurrer, to a fourteen-count complaint, and dismissing said complaint with prejudice. Appellant now raises six allegations of trial court error.

Upon review of the record below, and the arguments of counsel, for the reasons set forth herein, we affirm the dismissal of Counts I through VIII, and Counts XIII and XIV as to all appellees. We affirm the dismissal of Counts IX through XII as to appellees Cohen, Magarity, PNB, and the three appellee law firms, but reverse the dismissal of Counts IX through XII as to appellees Marion and Harvey, and remand for further proceedings consistent with this opinion.

The matter before us arises from a rather complex and bizarre history, which has recently been discussed in part in the related case of *Cohen v. Pelagatti,* 364 Pa.Super. 573, 528 A.2d 657 (1987). The relevant portion of that history is as follows: On April 12, 1983, the Honorable Bernard Snyder of the Philadelphia Court of Common Pleas handed down a decision in the case of *National Auto Brokers Corporation ("NABOR") v. Philadelphia National Bank ("PNB"),* Philadelphia County, December Term, 1974, No. 1179, awarding the NABCOR plaintiffs a multi-million dollar verdict. NABCOR had been represented by Gustine Pelagatti, Esquire; PNB had been represented by Gregory M. Harvey, Esquire, of the law firm of Morgan, Lewis and Bockius.

On May 6, 1983, in an unrelated case, *Edgehill v. Municipal Publications,* Philadelphia County, May Term, 1972, No. 2371, Judge Snyder again awarded a multi-million dollar plaintiff's verdict. A motion for Judge Snyder's disqualification was filed by Municipal's attorney, David Marion, Esquire, of the firm of Kohn, Savett, Marion, and Graf. On July 14, 1983, the motion was heard before Judge Snyder. Marion called Jill R. Cohen, Esquire, to testify in support of recusal. Cohen had been Judge Snyder's law clerk while the *NABCOR* and *Edgehill* decisions were pending, and was prepared to testify that both NABCOR counsel Pelagatti and Edgehill's counsel, M. Mark Mendel,[1] had improperly colluded with Judge Snyder prior to verdict. An offer of proof as to the substance of Cohen's proposed testimony

1. Mendel is not a party to this litigation.

was made in chambers. The testimony was disallowed; that afternoon, however, Marion called a press conference, in which he gave a detailed accounting of the substance of Cohen's disallowed testimony. Both Cohen and her attorney, Gregory Magarity, Esquire, of the firm of Wolf, Block, Schorr, and Solis–Cohen, declined public comment. As a result of Marion's conference, however, Cohen's allegations were publicly disseminated through several newspaper articles and television newscasts.

On July 18, 1983, Cohen signed an affidavit, prepared by Marion, stating that she was prepared to give sworn testimony in conformity with Marion's July 14 offer of proof. That same day, Gregory Harvey, counsel for PNB in the *NABCOR* case, telephoned Pelagatti, and indicated that he intended to use Cohen's affidavit, and Marion's offer of proof attached thereto, as the basis for a motion requesting that *NABCOR* be reopened, and that Judge Snyder be disqualified from further participation in *NABCOR*.

On August 5, 1983, Pelagatti attempted by phone to dissuade Harvey from taking such action, by relating that he had information that "a Jill Cohen" had been a mental patient at Fairmount State Hospital in May, 1981. He further indicated to Harvey that he would further investigate the background of law clerk Jill Cohen, to determine if the two Jill Cohens were the same person, if Harvey filed a motion for recusal based on Cohen's July 18 affidavit.

On August 9, 1983, Harvey informed Pelagatti that he would be filing a motion for recusal anyway, and using Cohen as a witness in support thereof. As a result, Pelagatti began that same day to issue *ex parte* subpoenas, under the *NABCOR* caption, to obtain Cohen's educational records, in order to determine if Cohen had taken a medical leave of absence in May, 1981, or had had a history of mental illness during her school years.

On August 18, 1983 Cohen's attorney Gregory Magarity phoned Pelagatti's office, and informed Pelagatti's employee, Stephen W. Bruccoleri, Esquire, that he strongly objected to the *ex parte* subpoenas, and wanted Pelagatti to stop

428

issuing subpoenas and making remarks characterizing his client as the "Jill Cohen" from Fairmount Farms. He further requested a letter from Pelagatti, stating Pelagatti's position as to the issuance of said subpoenas, and confirming Pelagatti's phone remarks to Harvey connecting Magarity's client to Fairmount Farms. In response, Pelagatti that day submitted a letter to Harvey under the *NABCOR* caption, and forwarded a carbon copy of said letter to Magarity. Upon receipt of Pelagatti's letter, Harvey wrote a reply letter, indicating what he believed to be inaccuracies in Pelagatti's account of their phone conversation, and accusing Pelagatti of an "abuse of (the) process" in the issuance of the *ex parte* subpoenas. Additionally, Harvey contacted Frederick N. Tulsky, a reporter with the Philadelphia Inquirer, and spoke with him concerning the subpoenas.

On the following morning, August 19, 1983, an article by Tulsky appeared in the Inquirer, discussing the subpoenas at some length. The article also made mention, once again, of the substance of Cohen's disallowed testimony, and contained Harvey's personal comments that Pelagatti's actions were "an abuse of process" and "exactly the conduct which (was) described" in Cohen's testimony. Cohen, Pelagatti, and Magarity did not comment in the Tulsky article; however, to protect Cohen from further harassment, Magarity obtained a temporary restraining order from the Honorable Berel Caesar. The order precluded Pelagatti from issuing any further subpoenas to obtain Cohen's records, and from publishing any further statements connecting Cohen with Fairmount Farms.

On the morning of August 20, 1983, Magarity filed a one million dollar lawsuit, on Cohen's behalf, against Pelagatti and the *NABCOR* plaintiffs, alleging defamation, invasion of privacy, abuse of process, and intentional infliction of emotional distress. Later that day, another Tulsky article appeared in the Inquirer, reporting the filing of Cohen's suit, and the issuance of the temporary restraining order the previous day. This Tulsky article did contain some

comments from Magarity, who referred to Pelagatti's use of subpoenas as "improper" and "possibly illegal".

Pursuant to Judge Caesar's restraining order, preliminary injunction hearings were held before the Honorable Harry A. Takiff, on August 24, 1983 and September 7, 1983. On September 16, 1983, Judge Takiff granted Cohen's request for a preliminary injunction, and forbade Pelagatti from issuing further subpoenas requesting Cohen's records, reviewing and/or disseminating any information in the records acquired prior to the restraining order, or otherwise invading Cohen's privacy.[2] The events of the hearing, and the contents of Judge Takiff's Memorandum and Order, were reported in various newspaper articles.

On October 15, 1983, Gregory Harvey filed a motion for the recusal of Judge Snyder from further involvement in the *NABCOR* proceeding. The motion was supported by David Marion's July 14 offer of proof in the *Edgehill* recusal hearings, and Cohen's July 18 affidavit.

On October 18, 1984, Pelagatti filed a fourteen-count civil action against: (1) Jill Cohen, (2) Gregory Harvey, (3) Harvey's firm, Morgan, Lewis, and Bockius, (4) Harvey's client, PNB, (5) David Marion, (6) Marion's firm Kohn, Savett, Marion, and Graf, (7) Gregory Magarity, and (8) Magarity's firm, Wolf, Block, Schorr, and Solis–Cohen. The counts alleged were as follows:

Counts I, II: Conspiracy to Obstruct Justice

Counts III, IV: Obstruction of Justice

Counts V, VI: Conspiracy to Interfere with Contractual Relationship

Counts VII, VIII: Interfering With Contractual Relationship

Counts IX, X: Conspiracy to Libel and Slander

Counts XI, XII: Libel and Slander

Counts XIII, XIV: Negligence

2. Judge Takiff's order was affirmed on appeal to the Superior Court. See *Cohen v. Pelagatti,* 342 Pa.Super. 626, 493 A.2d 767 (1985).

All named defendants filed preliminary objections to Pelagatti's complaint. On May 7, 1986, the Honorable Joseph T. Labrum, specially presiding by assignment of the Chief Justice, sustained all preliminary objections, and dismissed the entire complaint, as to all defendants, with prejudice. This timely appeal followed.

On appeal from an order sustaining preliminary objections in the nature of a demurrer, our standard of review is well established. This Court is required to accept as true all well-pleaded facts in the complaint, as well as all inferences reasonably deducible therefrom but is not required to accept the pleader's conclusions or averments of law. *Shaffer v. Stewart*, 326 Pa.Super. 135, 141–142, 473 A.2d 1017, 1020 (1984). We are only to determine whether sufficient facts have been pled which would permit recovery if ultimately proven. *Gordon v. Lancaster Osteopathic Hospital Association, Inc.*, 340 Pa.Super. 253, 260, 489 A.2d 1364, 1368 (1985). All doubts are to be resolved in favor of the sufficiency of the complaint. *Cisco v. United Parcel Services, Inc.*, 328 Pa.Super. 300, 476 A.2d 1340, 1341 (1984).

█ With these criteria in mind, we begin our analysis by noting, initially, that appellant Pelagatti has failed to preserve any claim of error with respect to the dismissal of the three appellee law firms and appellee PNB. While the statement of questions involved set forth in appellant's brief frames the issues on appeal broadly, so as to encompass the dismissal of all defendants, the argument section of appellant's brief makes no mention whatsoever of these firms or of PNB, nor offers any support for appellant's theory, as pled in his complaint, that these appellees were somehow "in control" or responsible for the intentional torts alleged to have been committed by attorneys Harvey, Marion, and Magarity. When an appellant fails to carry forward an argument in his brief, the omitted argument is waived. *Giant Markets v. Sigma Marketing Systems*, 313 Pa.Super. 115, 126 n. 2, 459 A.2d 765, 771 n. 2 (1983).

Turning, then, to the remaining four appellees Cohen, Harvey, Marion, and Magarity, appellant has raised six

different challenges to the dismissal of his complaint. As the complaint contains fourteen separate counts, we shall be taking the counts seriatim for simplicity's sake, and examining appellant's contentions of error as they arise within the context of each count, and as they pertain to each of the remaining appellees.[3]

Counts I through IV allege that the four remaining appellees conspired to obstruct, and did in fact obstruct, justice by employing: (1) Cohen's "perjured" proposed testimony; (2) Cohen's "false verification" of that testimony; and (3) "slanderous press conferences", to deprive appellant of both his business reputation and his rightful fee from the *NABCOR* verdict. The trial court dismissed all four counts, stating that there is no civil cause of action for obstruction of justice, and that a civil conspiracy will not lie where a civil cause of action does not exist for the alleged conspiratorial behavior. Appellant does not contest the trial court's assertion that a civil cause of action for obstruction of justice does not exist; as such, we deem that appellant has waived any argument that Counts III and IV, alleging obstruction of justice, should not have been dismissed. *Giant Markets, supra.* Appellant does argue, however, that the conspiracy counts state a viable cause of action, in that (1) a civil conspiracy to commit illegal acts is in and of itself actionable upon the commission of an overt

---

**3.** For the record, appellant alleges, in his statement of questions involved, that the trial court erred in finding:

(1) privilege to be an absolute defense when an attorney is sued for intentional or malicious conduct;

(2) that an attorney cannot be liable to third parties when he acts out of a malicious motive;

(3) that untrue remarks made at a press conference are absolutely privileged as within the course of regular judicial proceedings;

(4) that a civil conspiracy is not actionable in the absence of a civil cause of action for the alleged conspiratorial behavior;

(5) that a witness may plead judicial immunity as a defense to conspiracy to commit perjury; and

(6) that actual damages must be sustained before one may bring an action for slander, conspiracy, and interference with a contract.

Clearly, as framed, each contention relates to more than one count, while no one contention relates to all counts or all remaining appellees.

act pursuant to the common design, and the sustaining of actual damages; and (2) the perjured testimony, false verification, and slanderous press conferences were overt illegal acts in which the four appellees conspired, to appellant's detriment and harm.

▇ Initially, we note that appellant has misstated the law of civil conspiracy. The trial court was correct in its assertion that, absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act. See *Gordon*, supra, 340 Pa.Superior Ct. at 269, 489 A.2d at p. 1372 (no cause of action for conspiracy to defame where no basis for defamation action); also see *Rose v. Wissinger*, 294 Pa.Super. 265, 275, 439 A.2d 1193, 1199 (1982) (where no basis for defamation or outrageous conduct theories, no basis for conspiracy to commit those acts). Appellant has conceded, through lack of argument, that there is no civil cause of action for "obstruction of justice" per se.

Moreover, were we to grant appellant's argument that a civil conspiracy to commit an illegal act can be actionable on its own merits, we would nonetheless be constrained to find that appellant has not alleged any facts which would support a finding that appellees committed illegal acts which would subject them to potential damages liability.

▇ With respect to the alleged "perjured" testimony and "false verification" given by Jill Cohen, it is well settled that private witnesses, as well as counsel, are absolutely immune from damages liability for testimony, albeit false, given or used in judicial proceedings. See *Smith v. Griffiths*, 327 Pa.Super. 418, 476 A.2d 22, 24 (1984); also see *Binder v. Triangle Publications, Inc.*, 442 Pa. 319, 275 A.2d 53, 56 (1971). Clearly, an offer of proof, summarizing the substance of proposed testimony, and an affidavit attesting to the veracity of that testimony are two of the more obvious examples of communications within the confines of judicial proceedings. Hence, Cohen's proposed testimony and affidavit cannot now form the basis of a damages claim against either Cohen or her attorney; addi-

tionally, their usage by Marion at the *Edgehill* recusal hearing, or by Harvey in his attempt to reopen the *NAB-COR* matter, is not actionable.

■ With respect to the alleged "slanderous" press conferences, and statements to the press made by Marion, Harvey, and Magarity,[4] the trial court held that any repetition of Cohen's proposed testimony and affidavit to the press was likewise absolutely privileged. For reasons to be discussed at greater length, *infra,* we do not concur in this holding. However, upon review of the conspiracy allegations in Counts I and II pertaining to press matters, we find them to be a mere recasting of the later "conspiracy to libel/slander" counts in a different guise. We do not find them to provide the basis for separate "conspiracy to obstruct justice" counts.

We, therefore, uphold the dismissal of Counts I through IV as to all four remaining appellees.

Counts V through VIII of the complaint allege a conspiracy to interfere, and interference with, appellant's contractual relationship with the NABCOR plaintiffs in the *NAB-COR* litigation, on the part of the remaining appellees. Appellant alleges that: (1) the solicitation by Magarity of the August 18 letter, in which Pelagatti committed to writing his previous phone remarks connecting "a Jill Cohen" with Fairmount Farms; (2) the use of that letter by Cohen and Magarity in the filing of Cohen's "sham" trespass and equity actions; (3) the "leaking" of the Pelagatti letter to the press by Harvey; and (4) the statements to the press made by Marion, Harvey and Magarity, were all perpetrated with the specific intent of depriving appellant Pelagatti of his contingent fee in the *NABCOR* case, and of injuring his business reputation. The trial court dismissed these counts on the bases that all of the above acts were, again,

4. It is indisputable, on the basis of the record, that Cohen did not participate in, and in point of fact, deliberately avoided, press conferences and public comment. As such, she cannot now be held accountable for the content thereof; her participation was strictly limited to her proposed testimony, verification of that testimony, and filing of actions in trespass and in equity.

absolutely privileged as communications pertinent to judicial proceedings, and that, even if unprivileged, the acts in question had yet to cause actual harm to appellant, as the *NABCOR* matter was still pending. We concur in the trial court's dismissal of these counts, but only partially concur in this rationale.

To set forth a legally sufficient cause of action for intentional interference with contractual or prospective contractual relations, four elements must be pled:

(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;

(2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;

(3) the absence of privilege or justification on the part of the defendant; and

(4) the occasioning of actual legal damage as a result of the defendant's conduct.

See *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466, 471 (1979); *Birl v. Philadelphia Electric Co.*, 402 Pa. 297, 167 A.2d 472, 474 (1960).

Our review of the complaint reveals that elements (1) and (2) were sufficiently pled. We, therefore, confine our discussion to the latter two elements.

With respect to the question of privilege, we encounter no difficulty in finding the Cohen lawsuits,[5] and Magarity's solicitation, and later use, of the Pelagatti letter in the protection of his client's interests, to be absolutely privileged. See *Smith*, supra; also see Restatement (Second) of Torts, § 568. As for the media activities of Marion, Harvey, and Magarity, however, we do not find, for reasons to

---

5. Cohen's equity action, in fact, has already been upheld, by a panel of this Court, as a legitimate action seeking relief to which Cohen was entitled. This Court upheld Judge Takiff's granting of a preliminary injunction, preventing appellant Pelagatti from issuing further *ex parte* subpoenas for Cohen's educational records, and forbidding further invasion into her privacy. See *Cohen v. Pelagatti*, 342 Pa.Super. 626, 493 A.2d 767 (1985).

be discussed *infra* in relation to the libel/slander counts, that their conduct was absolutely privileged; their behavior was qualifiedly privileged at best. A qualified privilege is subject to loss by abuse, see *Binder*, supra; moreover, while the existence of a privilege, and the extent of that privilege, are questions of law for the court, it is a question of fact for the jury as to whether a qualified privilege has been abused. *Agriss v. Roadway Express, Inc.*, 334 Pa.Super. 295, 483 A.2d 456, 463 (1984). As such, we cannot hold, on the basis of privilege alone, that the facts pled as to Marion, Harvey, and Magarity were insufficient to state a cause of action for interference with a contractual relation. We must proceed to the fourth criterion, the occasioning of actual damage, to determine if Counts V through VIII should have been dismissed as to Marion, Harvey, and Magarity.

■ The Restatement (Second) of Torts defines "actual damages" for interference with a contract as follows, at § 774A:

§ 774A. Damages.

(1) One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for

(a) the pecuniary loss of the benefits of the contract or the prospective relation;

(b) consequential losses for which the interference is a legal cause; and

(c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference....

Appellant has pled both pecuniary loss, as to his contingent fee in *NABCOR*, and harm to his business reputation. This Court has recently determined that appellant's claim of pecuniary loss is premature as a matter of law prior to actual deprivation of the NABCOR verdict through final judgment. See *Cohen v. Pelagatti*, 364 Pa.Super. 573, 528 A.2d 657 (1987). As for appellant's claim that the alleged interference harmed his business reputation, the gravamen

of this tort is the lost pecuniary benefits flowing from the contract itself; other losses, such as emotional distress and loss of reputation, are consequential harms. See Restatement (Second) of Torts, § 766, Comment t. In the absence of pecuniary loss, an action for interference with contract brought for the purpose of recouping damages for loss of reputation only, would be nothing more than a defamation action under a different caption. Appellant has also pled, in libel/slander counts, that Marion, Harvey, Magarity harmed his business reputation through their media involvement. The interference counts, as they relate to Marion and Harvey, are premature and needlessly repetitive.

As we find no basis for the contractual interference counts, as to all remaining appellees, the conspiracy counts must fail as well. *Gordon,* supra; *Rose,* supra.

We therefore uphold the dismissal of Counts V through VIII as to all appellees.

Counts IX through XII allege that appellees conspired to, and did in fact, libel and slander appellant, through: (1) Cohen's "perjured" proposed testimony; (2) Cohen's "sham" lawsuits; (3) Harvey's supposed misrepresentations, as evidenced by Harvey's August 18 reply letter, of Pelagatti's phone remarks on the subject of Jill Cohen and Fairmount Farms; and (4) the dissemination of various allegations of wrongdoing on the part of Pelagatti, through the media activities of Marion, Harvey, and Magarity. The trial court dismissed all four counts, once again, on the basis of absolute privilege. We find partial merit to appellant's contention that this was error.

As stated previously, communications pertinent to any stage of judicial proceedings are accorded an absolute privilege, which cannot be destroyed by abuse; therefore, statements made by a party, a witness, counsel, or a judge, cannot be the basis of a defamation action when made in pleadings, open court, or even in less formal circumstances, such as preliminary conferences, negotiations, and routine correspondence exchanges between counsel in furtherance of their clients' interests. *Smith,* supra, 476 A.2d at pp.

24–25; *Binder,* supra. The policy reasons for the absolute privilege are well recognized. A judge must be free to independently administer the law; parties must be afforded freedom of access to the courts; witnesses must be encouraged to give complete and unintimidated testimony; and counsel must be enabled to best represent their clients interests, without fear of reprisal through defamation actions. The courts have the appropriate internal sanctions to deal with defamatory statements given in judicial proceedings, such as perjury and contempt proceedings, and are capable of utilizing these sanctions to ensure protection of the public good, thereby obviating the need for the threat of civil damages liability. *Binder,* supra.

■ The same considerations, however, do not apply to newspaper accounts of judicial proceedings, or to remarks uttered at press conferences. These are extra-judicial communications which are not subject to the internal controls of the court system, and do not require the same degree of protection as those communications which are essential to the integrity and independence of the judicial system. As such, they enjoy a qualified immunity only: in the interests of keeping the public informed, newspaper articles are entitled to make fair and accurate report of judicial proceedings and involved parties, witnesses, and counsel are permitted to make remarks to the press relative to proceedings, and no responsibility will attach, even if the contents of articles or remarks are false or defamatory, provided the articles and/or remarks were not published solely for the purpose of causing harm. *Binder,* supra; also see *Barto v. Felix,* 250 Pa.Super. 262, 267–271, 378 A.2d 927, 930–31 (1977). Where the plaintiff is able to demonstrate that defamatory communications to the press were made for an improper or malicious motive, the qualified privilege is lost. *Binder,* supra; *Barto,* supra. It is a question of fact for the jury as to whether a qualified privilege has been lost by abuse. *Agriss,* supra.

■ Turning now to appellant's allegations of defamatory behavior, we have already concluded, with respect to the

dismissal of the contractual interference counts, that Cohen's proposed testimony at the *Edgehill* recusal hearings, as well as Cohen's trespass and equity actions, were absolutely privileged judicial communications. Likewise, we conclude that Harvey's August 18 reply letter to Pelagatti was absolutely privileged, as pertinent and material to the redress sought by Harvey and his client, PNB, in the *NABCOR* proceedings. However, the media statements disseminated by Marion, Harvey, and Magarity, even in their reiteration of the contents of privileged judicial documents, were extra-judicial communications protected by a qualified immunity only. Hence, we must now review the specific allegations contained within the defamation counts to determine if appellant pled sufficient facts to establish the elements of defamation. If the elements of defamation were sufficiently pled, appellant was entitled to a jury determination as to whether the media statements were defamatory, and made by the attorney-appellees solely for the purpose of causing harm, thereby defeating any claim of privilege.

Generally, a defamatory action must allege: (1) the defamatory character of the communication; (2) publication; (3) that the communication refers to the complainant; (4) the third party's understanding of the communication's defamatory character; and (5) injury. *Walder v. Lobel*, 339 Pa.Super. 203, 213, 488 A.2d 622, 627 (1985); 42 Pa.C.S. § 8343(a).

Our review of the various press statements, as summarized in our initial recitation of the facts, indicates that discussion of elements (2) and (3) is unwarranted; clearly, all three attorneys made remarks, pertaining to the propriety of Pelagatti's conduct, which were published in the Philadelphia newspapers. We need only concern ourselves with (1), (4), and (5).

With respect to (1) and (4), the character of the remarks, and the perception of those remarks by the public, it is well-settled law that a communication which ascribes to another conduct, character, or a condition that would ad-

versely affect his fitness for the proper conduct of his business, trade, or profession, is defamatory per se. See *Fram v. Yellow Cab Co. of Pittsburgh,* 380 F.Supp. 1314 (D.C.Pa.1974); also see *Gordon,* supra, 489 A.2d at p. 1368. Where there is any doubt that the communication disparages or harms the complainant in his business or profession, that doubt must be resolved in favor of the complainant; even where a plausible innocent interpretation of the communication exists, if there is an alternative defamatory interpretation, it is for the jury to determine if the defamatory meaning was understood by the recipient. *Gordon,* supra.

■ Turning to the various press statements, as incorporated by exhibits attached to appellant's complaint, we deem the statements sufficient, as a matter of law, to support a possible jury determination that they were defamatory per se. In the various articles following the July 14 *Edgehill* recusal hearing, Marion repeated the allegations, contained within Cohen's proposed testimony, that Pelagatti met privately with Judge Snyder in chambers, as well as socially, while *NABCOR* was pending, and that Pelagatti was to author the *NABCOR* post-trial opinion. Harvey, following the August 18 Pelagatti letter, commented to the press that Pelagatti's behavior, in sending out *ex parte* subpoenas, was "an abuse of process" and "exactly the conduct which (was) described" in Cohen's proposed testimony, which was then reiterated by the articles in question for the benefit of the reader. Magarity, following the issuance of Judge Caesar's temporary restraining order, told the press that Pelagatti's conduct was "improper" and "possible illegal". Clearly, statements to the effect that an attorney has committed improper, illegal actions within the context of his practice, would tend to impugn his integrity, and thereby blacken his business reputation.

However, it is also well settled that defamatory words, even if defamatory per se, will not provide a basis for recovery where the words are true; truth is a complete and absolute defense to a civil action for defamation. *Corabi v. Curtis Publishing Co.,* 441 Pa. 432, 273 A.2d 899, 910

(1971). Furthermore, while the affirmative defense of truth is generally to be pled in new matter, an affirmative defense may be raised by way of preliminary objections where it is established on the face of the complaint, or where the plaintiff fails to object to the procedural irregularity. See *Iudicello v. Commonwealth of Pennsylvania, Department of Transportation*, 34 Pa.Cmwlth. 361, 383 A.2d 1294 (1978) (sovereign immunity may be raised by demurrer when appearing on the face of the complaint); *Cooper v. Downington School District*, 238 Pa.Super. 404, 357 A.2d 619, 621 (1976) (demurrer based upon affirmative defense of statute of limitations upheld where defense was clearly applicable). As we are empowered to affirm the action of the trial court upon any ground, see *Butler v. DeLuca*, 329 Pa.Super. 383, 390, 478 A.2d 840, 843 (1984), and all appellees raised truth, without objection from appellant, in their preliminary objections, it is appropriate that we consider whether the absolute defense of truth was apparent on the face of the complaint.

■ Again, reviewing the remarks of counsel, it would appear that all of Magarity's remarks, which related to the propriety of the *ex parte* subpoenas, and the bulk of Harvey's remarks to the same effect, are discernibly true from the face of the complaint. Exhibits to the complaint include both the transcripts of the preliminary injunction hearing before Judge Takiff, and the newspaper articles following the issuance of Judge Takiff's order and opinion, in which Judge Takiff held the subpoenas to be "grossly improper and patently inappropriate". This holding has been affirmed on appeal, and is res judicata on the propriety of the subpoenas. See *Cohen v. Pelagatti*, 342 Pa.Super. 626, 493 A.2d 767 (1985). As such, appellant's complaint admits the defense of truth as to the thrust of these remarks on its face. However, a different scenario is presented by Harvey's additional comment that the improper issuance of the subpoenas was "exactly the same" type of conduct on Pelagatti's part as alleged in Cohen's proposed testimony; it has yet to be established as true that Pelagatti engaged in improper collusion with Judge Snyder in the *NABCOR*

case. Likewise, Marion's statements merely reiterate the collusion allegations, which are potentially false.

 Hence, we find Marion's remarks, in their entirety, and Harvey's remarks pertaining solely to Pelagatti's conduct as alleged by Jill Cohen, legally sufficient to support a possible jury finding of defamation per se, thereby satisfying the first and fourth criteria for the pleading of a legally sufficient cause of action in defamation.

With respect to element (5), the pleading of injury, appellant alleges both economic injury, through loss of the *NABCOR* contingent fee, and harm to his business reputation. We have already deemed any claim of pecuniary loss pertaining to the *NABCOR* verdict to be premature prior to final judgment. However, the law is clear that reputational damage alone is actionable without proof of special damages, where the claim is one of slander per se to business reputation. *Chicarella v. Passant,* 343 Pa.Super. 330, 494 A.2d 1109, 1115 n. 5 (1985); *Agriss,* supra, 483 A.2d at p. 473.

Therefore, we now hold that counts XI and XII, in libel/slander, should not have been dismissed as to appellees Marion and Harvey.

 As for the conspiracy counts, a civil conspiracy becomes actionable when some overt act is done in pursuance of the common purpose or design, and actual legal damage results. *Baker v. Rangos,* 229 Pa.Super. 333, 351, 324 A.2d 498, 506 (1974). Where the existence of identifiable damages, even if nominal, is established by the facts alleged, the gravamen of the civil conspiracy has been sufficiently pled: it is the *fact* of damages, rather than the amount, that is the key inquiry. *Baker,* supra; also see *Mariscotti v. Tinari,* 335 Pa.Super. 599, 602, 485 A.2d 56, 57 (1984). In the matter at hand, appellant has certainly pled damages which are neither futuristic nor speculative; clearly, any reputational harm from the allegedly defamatory remarks of Marion and Harvey was sustained upon publication of the various newspaper articles. Counts IX and X, alleging a "conspiracy to libel/slander", were also improperly dismissed as to Marion and Harvey.

■ The final two counts of appellant's complaint, Counts XIII and XIV, allege negligence on the part of the remaining appellees in: (1) permitting a "false" offer of proof and "false" verification to be used in connection with judicial proceedings; and (2) giving "slanderous" statements to the press based upon these "false" judicial communications. The trial court dismissed these counts on the basis of the privity rule: the privity rule states that an attorney will be held liable for negligence only to his client, and not to anyone else. *Smith,* supra, 476 A.2d at p. 26; also see *Mentzer & Rey, Inc. v. Ferrari,* 367 Pa.Super. 123, 532 A.2d 484 (1987). Appellant now contends that this was error, in that attorneys may be liable to third parties regardless of privity where their conduct is motivated by malice, or involves the commission of the intentional tort. *Id.*[6] Appellant, while rendering a correct statement of the law as to the potential liability of an attorney to a third party upon the commission of an intentional tort, fails to explain how this exception to the privity requirement permits him to sustain a *negligence* action against the attorney-appellees. We adopt the trial court's dismissal of Counts XIII and XIV as to all appellees.

In light of the foregoing, we now enter the following order. The dismissal of Counts I through VIII and Counts XIII and XIV is affirmed as to all appellees. The dismissal of Counts IX through XII is affirmed as to Cohen, Magarity, PNB, and the three appellee law firms. The dismissal of Counts IX through XII is reversed as to Marion and Harvey, solely with respect to those allegations pertaining to their media statements relating to Cohen's proposed testimony. Order affirmed in part, reversed in part. Remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

JOHNSON, J., files a concurring opinion.

---

6. As appellant's arguments relate solely to negligence on the part of the attorney-appellees, and attorney negligence is not actionable against the client, these counts were properly dismissed as to Cohen.

JOHNSON, Judge, concurring:

I join the Majority's decision and analysis with respect to the following: Counts I through VIII; Counts XIII and XIV as to all Appellees; and, the affirmance of the dismissal of Counts IX through XII as to Appellees Cohen, Magarity, PNB, and the three Appellee law firms. I also join the Court's decision to reverse the dismissal of Counts IX through XII as to Appellees Marion and Harvey and to remand these counts for Amendment of the Complaint.

I do not agree, however, with that part of the Majority's analysis of Counts IX through XII which discusses the possibility of a qualified privilege providing immunity to Marion and Harvey for their statements to the press. Slip Opinion at 14 and 18. The majority relies upon the case *Binder v. Triangle Publishing Inc.*, 442 Pa. 319, 275 A.2d 53 (1971), and describes the qualified immunity that applies to extra-judicial communications as follows:

> in the interests of keeping the public informed, newspaper articles are entitled to make fair and accurate report of judicial proceedings and involved parties, witnesses, and counsel are permitted to make remarks to the press relative to proceedings, and no responsibility will attach, even if the contents of articles or remarks are false and defamatory, provided the articles and/or remarks were not published solely for the purpose of causing harm.

Majority opinion at 437. According to *Binder*, extra-judicial statements are protected by a qualified immunity when the statements refer directly to court proceedings. The court in *Binder* held that there was no defamation when a newspaper used vivid words to characterize the judicial proceedings it was reporting because the words were not unfair or inaccurate. *Binder, supra.*

The statements to the media made by Marion and Harvey do not rise to the level of those discussed by the Court in *Binder* as privileged extra-judicial statements. Marion called a news conference and repeated Cohen's allegations contained in her disallowed private offer of proof in the recusal hearing of Judge Snyder. A voluntary act of disseminating information which has been barred from court

proceedings cannot afford the basis for a consideration of conditional immunity.

Harvey's statement to the press, characterizing Pelagatti's behavior in sending out *ex parte* subpoenas as "an abuse of process" and "exactly the conduct which was described" in Cohen's offer of proof, as well as "improper ... and possibly illegal" also did not come from the record of court proceedings. Majority opinion at 439. This statement must be analyzed for defamatory content in the same manner as any out of court statement.

I have carefully reviewed the facts of this case and find that they provide no basis for the extension of a qualified privilege. I am concerned that the Court appears to be analyzing the activities of attorneys, who make out of court statements not directly associated with court proceedings, at a different level than similar statements made by non-attorneys.

I would find that the relevant statements made by Marion and Harvey were not privileged. Analyzed for defamatory content on this basis, those statements support a possible jury finding of defamation per se. *Walder v. Lobel,* 339 Pa.Super. 203, 213, 488 A.2d 622, 627 (1985). I therefore join the Court's decision to reverse the dismissal of Counts IX through XII.