J-A09038-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| JACK KRAUSS AND CINDY BRILLMAN | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| Appellants | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHELE D. SIRKO, INDIVIDUALLY, | : | No. 1418 WDA 2017 |
| AND IN HER CAPACITY AS TRUSTEE | : | |
| OF A TRUST ESTABLISHED BY JOHN | : | |
| E. CLAAR AND D. ELMEDA CLAAR, | : | |
| RICHARD K. SIRKO; BRANDON K. | : | |
| SIRKO; AND SHANTAY SIRKO | : | |

Appeal from the Judgment Entered September 26, 2017
In the Court of Common Pleas of Blair County Civil Division
at No: 2001 GN 6590

BEFORE:  BOWES, J., DUBOW, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                              FILED MAY 25, 2018

Jack Krauss and Cindy Brillman (Appellants)[1] appeal from the trial court's dismissal of their claims of tortious interference and civil conspiracy against Michele D. Sirko, individually and in her capacity as trustee of a trust established by her parents, John E. Claar and D. Elmeda Claar; Michele's husband, Richard K. Sirko; and Michele's children, Brandon K. Sirko and

_____

[1] For ease of discussion, we refer to Cindy Brillman as "Appellant," and Cindy Brillman and Jack Krauss together as "Appellants."  Appellants previously resided together.  See N.T. Trial, 9/19/16, at 14; Appellants' Fourth Amended Complaint, 7/27/07, at 1.

Shantay Sirko (the Sirkos). We affirm.

This case arises from Appellants' agreement to purchase nine parcels of real estate owned by the Estate of John Claar, Elmeda Claar, and the Sirkos. As Appellants' issues concern the evidence adduced at trial, we underscore the following findings of fact. See Trial Court Memorandum, 7/5/17, at 2-13.[2] John and D. Elmeda Claar owned eight parcels of unimproved property in Blair County, totaling 1,264 acres. They also owned one parcel of land, comprised of 218 acres in Bedford County (contiguous to the eight Blair County parcels). In 1999, John and Elmeda conveyed the Bedford County parcel to their daughter, Michele D. Sirko, as trustee under a trust agreement.[3] John died testate in February 2000, and that fall, his estate decided to sell the eight Blair County parcels. John's longtime attorney, John Sullivan, Esquire, asked Michele if she wanted to sell the one Bedford County parcel as well. Michele agreed "because she was certain that she would not have to sell if she wasn't satisfied with the price." Id. at 3-4. An advertisement for bids to purchase all nine parcels was published in October 2000. Id. at 4. "The advertisement contained descriptions of the properties, and with respect to the Bedford County property owned by [Michele] Sirko[,]

_____

[2] Although the trial court's order and memorandum is dated June 26, 2017, it was filed and docketed on July 5, 2017.

[3] The four beneficiaries of the trust were Michele, her children Brandon and Shantay, and Connie J. Baker, a friend and employee of John Claar.

the description noted that '[T]he Pennsylvania State Park appears to claim approximately eight acres of this property, specifically the southwestern corner of Bedford County Tax Parcel D2-3. A boundary survey would be required to resolve this possible boundary dispute.'" Id.

Three sealed bids were submitted, including one by Appellants, and the bids were opened on November 16, 2000 at Attorney Sullivan's law office. Among the individuals present were Attorney Sullivan, Elmeda, Michele, and her husband, Richard. Michele later testified at trial that at the time, Attorney Sullivan advised her that the trust would receive $587,000[4] for the Bedford County parcel. Michele did not agree to sell at that time because she wanted to talk with her son, Brandon. Nevertheless, Appellants' bid, in the amount of $3,600,000, was accepted.[5] As security, Appellants' bid included a check for $100,000. Appellants wanted "[a] quick closing [because] they had a

_____

[4] The trial court stated the figure was both "Five Hundred Eighty-Seven Thousand Five Hundred Twenty" and $589,520. Trial Court Memorandum, 7/5/17, at 5. Michele's trial testimony was that it was $587,000. N.T. Trial, 9/19/16, at 158.

[5] The record is unclear as to who accepted the bid. Appellant, who was not present when the bids were opened, testified that Attorney Sullivan subsequently told her that Richard Sirko was "very vocal" that the bid was not high enough, but nevertheless, "Michele and her mother agreed that they would accept it." N.T. Trial, 9/19/16, at 27. Richard testified that Michele did not accept the bid, and that even if she wanted to accept, she could not without Brandon's agreement. Id. at 119. Richard further stated that he believed Connie Baker "probably accepted it because she was one of the beneficiaries." Id. at 121. Finally, Michele denied that she had accepted the bid, and testified that instead, she had stated she would have to talk with her son first. Id. at 157.

- 3 -

buyer for the timber on the real estate," and they insisted on a closing date before January 31, 2001. Id. at 6. Attorney Sullivan drafted an agreement of sale, which set November 22, 2000 as the date of settlement.

On November 22, 2000, Elmeda signed the agreement of sale, but Michele did not appear at settlement and did not sign the agreement. However, on January 25, 2001, Elmeda, Michele, and Appellants signed an "Addendum of Agreement of Sale for Real Estate," which provided that the parties agreed to extend the date of settlement on all nine parcels to February 21, 2001. Later at trial, Michele testified "that she was under a lot of pressure" from the executors of her father's estate and her mother's attorneys to sell. Id. at 7-8. Michele stated that she also agreed to sign the addendum "because she knew her mother wanted to sell and [Appellants] would only purchase all nine . . . parcels." Id. at 8.

However, "[b]ecause of this delay and the fact that winter weather conditions had prevented [Appellants] from completing surveying and other tasks necessary for closing, the parties agreed to close" only on the Bedford County parcel on February 23, 2001. Id. The sale of the Bedford County parcel occurred on February 23, 2001, with a sale price of $587,520. Michele signed a "Seller's Affidavit," which stated that she was "not aware of any adverse ownership claims or disputes regarding the property, including but not limited to boundary disputes with neighboring property owners." Id. at 9. Appellant later testified that "she very much wanted to talk privately with

[Elmeda,] but she was 'not permitted.'" Id. at 10.

Nevertheless, at the closing, Appellants and Elmeda entered into a "Second Addendum to Agreement of Sale for Real Estate," which extended settlement for the remaining eight Blair County parcels to no later than April 30, 2001. Id. at 9. Appellant testified that this date was selected "in order to allow the attorneys time to . . . clear the titles to the eight . . . parcels." Id. at 10. However, in early April 2001, Appellants learned "that the title curative work was not getting done," because, in Appellant's opinion, the attorneys "couldn't get to see" Elmeda. Id. In an April 6, 2001 letter to Attorney Sullivan, Appellants suggested closing on April 30, 2001 on some of the parcels that had no curative issues. Attorney Sullivan did not respond to Appellants' letter and the April 30, 2001 settlement date passed.

Subsequently, two "Third Addendums to the Agreement of Sale" were prepared. The first was proposed by Appellants and called for settlement on one parcel on or before May 31, 2001, and settlement on the remaining parcels on or before October 15, 2001. Elmeda did not sign this Addendum, even though Appellants' real estate attorney indicated in a note to Appellant that Elmeda would. The second draft, dated April 30, 2001, "was apparently prepared by Attorney Sullivan" and provided for closing on or before October 15, 2001. Id. at 11. Appellants made some handwritten modifications to this Addendum, signed it, and faxed it to Attorney Sullivan. However, "[i]t is not clear whether Elmeda signed it. For various reasons, including Elmeda's

health, closing did not occur in October 2001. Id. at 12. "Litigation quickly ensued." Id.[6]

On December 13, 2001, Appellants commenced two separate actions in Blair County. The first alleged breach of contract against Elmeda and others. Elmeda filed a counter-claim of breach of contract, and that case proceeded to trial in 2010. The jury found that both Appellants and Elmeda breached the Agreement of Sale and awarded $100,000 to Appellants, representing the amount they tendered as security with their bid. The jury awarded no damages to Elmeda. According to the parties' stipulation, Appellants and Elmeda ultimately settled the case through a confidential settlement agreement. Stipulation, 12/16/16, at 8.

In the second lawsuit — the one underlying this appeal — Appellants averred, inter alia, tortious interference and a claim of civil conspiracy against the Sirkos.[7] The complaint alleged that the Sirkos prevented Elmeda from selling the eight remaining parcels to them and thus improperly interfered with their agreement with Elmeda. This case proceeded to a non-jury trial on

_____

[6] This case was docketed at 2001-06591, Elmeda died in 2009, her estate was substituted as a party, and at the start of trial, the court noted that this was the oldest pending civil case in Blair County. N.T. Trial, 9/19/16, at 5.

[7] Appellants' fourth amended complaint also pleaded claims of breach of contract, negligent/intentional misrepresentation, promissory estoppel, equitable estoppel, and unjust enrichment. The trial court dismissed these counts prior to trial.

September 19, 2016. Pertinently, Michele testified that she believed the Bedford County parcel had a fair market value of $1,000,000, and that she and her husband Richard believed that the fair market value of all nine parcels of property exceeded $6,000,000. Following trial, both parties submitted proposed findings of facts and conclusions of law.

On July 5, 2017, the trial court issued an order dismissing Appellants' tortious interference claim, finding that Appellants failed to prove the second element necessary to succeed on a claim of tortious interference — that the Sirkos did anything improper with an intent to harm Appellants. Trial Court Memorandum, 7/5/17, at 18. The trial court explained:

> This evidence simply does not prove that the Sirko family or any one of them did anything improper with intent to harm [Appellants]. In this regard, Mrs. [Michele] Sirko had no duty or obligation to sign the Agreement of Sale. She had every right not to sell the Bedford County property. Her refusal to sell until she was pressured to do so by her mother's gaggle of advisors in no way interfered with the contractual relationship between Mrs. [Elmeda] Claar and [Appellants]. The fact that she did agree to sell can only be interpreted under the circumstances as an effort on her part to assist her mother and parenthetically [Appellants] in concluding their real estate sale.

Trial Court Memorandum, 7/5/17, at 18. On the same basis, the trial court additionally dismissed Appellant's remaining count of civil conspiracy. Id., citing Pelagatti v. Cohen, 536 A.2d 1337, 1342 (Pa. Super. 1987) ("[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act.").

- 7 -

Appellants filed a timely motion for post-trial relief,[8] arguing that the trial court construed the "intent" element of tortious interference too narrowly and failed to consider the Restatement (Second) of Torts. Appellants asserted that the Restatement provides that tortious interference may be established where the actor does not purposefully act to interfere, but knows that interference is certain or substantially certain to occur as a result of his action. The trial court denied the motion, and Appellants timely appealed.[9] Appellants have complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors.

Appellants present the following issues for our review:

I. Whether the trial court erred and/or abused its discretion in dismissing Appellants' claim for tortious interference with a contractual relationship by misconstruing the intent to harm element of that claim and thus ignoring relevant evidence demonstrating that Appellees acted intentionally and knew or should have known that their actions would prevent the

_____

[8] Although the court's order was dated June 26, 2017, the docket states that notice was not provided until July 5th. Accordingly, the 10-day period for filing a post-trial motion did not begin to run until July 5th, and Appellants' motion for post-trial relief, filed on July 6th, was timely. See Pa.R.A.P. 108(b) (date of entry of an order in a matter subject to Pa.R.Civ.P. shall be day on which clerk makes notation in docket that notice of entry of the order has been given pursuant to Pa.R.Civ.P. 236(b)); Pa.R.Civ.P. 236(b) (prothonotary shall note in docket the giving of notice); and Pa.R.Civ.P. 227.1(c)(2) (post-trial motion shall be filed within 10 days after decision in the case of a trial without jury).

[9] The trial docket shows that Appellants filed a praecipe to enter judgment, and two days thereafter, before any final judgment was entered, filed a notice of appeal. While "the entry of judgment is a prerequisite to our exercise of jurisdiction," we "regard as done that which ought to have been done." See Fanning v. Davne, 795 A.2d 388, 392 (Pa. Super. 2002).

underlying contract from being completed?

II. Whether the trial court erred and/or abused its discretion in dismissing Appellants' claim for conspiracy where its dismissal of that claim was based upon the erroneous dismissal of Appellants' claim for tortious interference with a contractual relationship?

Appellants' Brief at 4.

In their first issue, Appellants again challenge the trial court's rationale that, with respect to their tortious interference claim, Appellants were required to prove purposeful action by the Sirkos specifically intended to harm the relationship between Appellants and Elmeda Claar. Appellants reiterate that the trial court's analysis was improperly narrow, and the trial court disregarded the Restatement, which provides that tortious interference may be established even where "the actor does not act for the purpose of interfering with the contract . . . but knows that the interference is certain or substantially certain to occur as a result of his action." Id. at 26, quoting Restat 2d of Torts, § 766, comment j.[10] Appellants also emphasize that in the

_____

[10] Section 766 of the Restatement states:

Intentional Interference with Performance of Contract by Third Person.

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Restat 2d of Torts, § 766.

Restatement, the word "intent" is defined to "denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." Id. at 27, quoting Restat 2d of Torts, § 8A. Applying these criteria, Appellants maintain they presented sufficient circumstantial evidence "that [the Sirkos] knew that their interference with the Agreement was certain or substantially certain to occur as a result of their actions." Id. at 28. In support, they cite the trial evidence: Michele and her husband Richard believed the nine parcels together had a value of $6,000,000 to $6,500,000 (substantially more than Appellants' bid of $3,600,000); Michele and Richard knew that all nine parcels would be sold together, that Elmeda was ready to sell her eight parcels, and that if Michele refused to sell the Bedford County parcel, the sale agreement would "fall apart"; and between the November 2000 signing of the initial sale agreement and the February 2001 closing on the Bedford County parcel, "Appellants were advised on numerous occasions, including by Attorney Sullivan, that Richard and Michele interfered with the consummation of the Agreement." Id. at 19-21.

We note the relevant standard of review:

The findings of a trial judge in a non-jury trial are given the same weight and effect as a jury verdict such that the court's findings will not be disturbed on appeal absent an abuse of discretion, error of law, or lack of support in the record. . . .

It is not the role of an appellate court to pass on the credibility of witnesses or to act as the trier of fact. In a non-jury trial, the factfinder is free to believe all, part, or none of the evidence, and the Superior Court will not disturb the trial court's credibility determinations. Nonetheless, the trial court's conclusions of law

- 10 -

are not binding on an appellate court.

L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard Inc., 777 A.2d 1090, 1092-93 (Pa. Super. 2001) (citations omitted).

"[W]e have repeatedly looked to the Restatement [(Second) of Torts] as authority for the elements of a cause of action for intentional interference with existing contract relations." Walnut St. Assocs. v. Brokerage Concepts, Inc., 20 A.3d 468, 475 (Pa. 2011). This Court has stated:

> We have defined the elements of tortious interference with contractual relations as follows:
>
> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;
>
> (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;
>
> (3) the absence of privilege or justification on the part of the defendant; and
>
> (4) the occasioning of actual legal damage as a result of the defendant's conduct.
>
> In determining whether a particular course of conduct is improper for purposes of setting forth a cause of action for intentional interference with contractual relationships, or, for that matter, potential contractual relationships, the court must look to section 767 of the Restatement (Second) of Torts. This section provides the following factors for consideration: 1) the nature of the actor's conduct; 2) the actor's motive; 3) the interests of the other with which the actor's conduct interferes; 4) the interests sought to be advanced by the actor; 5) the proximity or remoteness of the actor's conduct to interference, and 6) the relationship between the parties.

Skiff re Business, Inc. v. Buckingham Ridgeview, LP, 991 A.2d 956, 965-

66 (Pa. Super. 2010) (citations omitted). Under the Restatement, "[t]ortious interference, as a basis for civil liability [may] attach [as] a reasonable consequence when the defendant's intentional interference was 'improper.'" Walnut St. Assocs., 20 A.3d at 475.

In its Pa.R.A.P. 1925(a) memorandum, the trial court confirmed its determination that Appellants failed to prove the Sirkos intended to harm Appellants or "had done anything improper." Trial Court Memorandum, 11/14/17, at 2. The court rejected Appellants' contention that tortious interference may be found where the actor merely knows that the consequence of his actions would interfere with a contract. Instead, the court concluded that case authority requires "proof that the Defendant acted for the specific purpose of causing harm to Plaintiff," and that "in order to succeed in a cause of action for tortious interference with a contract, a Plaintiff must prove not only that a Defendant acted intentionally to harm the Plaintiff, but also that those actions were improper." Id., citing Empire Trucking Co. v. Reading Anthracite Coal Co., 71 A.3d 923, 934 (Pa. Super. 2013); Phillips v. Selig, 959 A.2d 420, 429 (Pa. Super. 2008).

Although the trial court did not refer specifically to the Restatement — either in its recitation of Appellants' argument or its own discussion of authority — both of the decisions it cited reference the Restatement as authoritative in Pennsylvania with regard to tortious interference. See Empire Trucking Co., 71 A.3d at 934; Phillips, 959 A.2d at 429.

Further, we must consider the Restatement relative to the trial court's findings of fact. The court found, and Appellants do not dispute, that during the bidding, Michele believed that she did not have to sell the Bedford County property if she was not satisfied with the price; that even though Michele refused to sign the initial sale agreement, Elmeda did sign it; and that ultimately, Michele agreed to sell — and did sell — the property because, in part, she wanted her mother, Elmeda, to be able to sell her properties. Trial Court Memorandum, 7/5/17, at 15-16. Significantly, the court also found, "After settlement, [Michele] and her family were not involved with the sale of the remaining eight . . . parcels to" Appellants, and "[t]he evidence suggested that the delay from February 23, 2001, forward was the result of the inability of [Appellants'] real estate attorney to clear the titles to the various parcels." Id. at 17. The court concluded:

> While it was clear from the testimony and exhibits that [Appellant] had formed opinions regarding the relationship between Elmeda Claar and her daughter and son-in-law, no witnesses testified to the facts that formed the basis for [Appellant's] opinions.
>
> \* \* \*
>
> Th[e] evidence simply does not prove that the Sirko family or any one of them did anything improper with intent to harm [Appellants]. In this regard, [Michele] had no duty or obligation to sign the Agreement of Sale. She had every right not to sell the Bedford County property. Her refusal to sell until she was pressured to do so by her mother's gaggle of advisers in no way interfered with the contractual relationship between [Elmeda] and [Appellants]. The fact that she did agree to sell can only be interpreted under the circumstances as an effort on her part to assist her mother and parenthetically [Appellants] in concluding their real estate sale.

Trial Court Memorandum, 7/5/17, at 17-18.

> [O]ur conclusions were that [Appellees] did nothing wrong and certainly did not intend to interfere with the sale [by] Elmeda Claar of her eight lots to [Appellants]. We concluded that [the Sirkos] sold their Bedford County property to [Appellants] so that the contract with Mrs. Claar could be consummated. No evidence suggested that [the Sirkos] intended to harm [Appellants] and no evidence factually established that they ever interfered with the contract relationship between [Appellants] and Mrs. Claar.

Trial Court Memorandum, 11/14/17, at 2-3.

Applying prevailing case law and the Restatement, we find no basis to disturb the trial court's finding that Appellants failed to establish purposeful action by the Sirkos intended to harm Appellants' contractual relationship with Elmeda. See Skiff, 991 A.2d at 965-66. In discussing only the trial evidence that was favorable to them, Appellants ignore the trial court's express finding that Michele sold the Bedford County parcel so that her mother, Elmeda, could sell her eight parcels, and that after settlement, the Sirkos were not involved with the sale of the remaining parcels. Appellants' argument would require this Court to impermissibly reweigh the evidence in their favor and disregard the trial court's credibility findings. See L.B. Foster Co., 777 A.2d at 1092-93. Accordingly, we affirm the dismissal of Appellants' tortious interference claim.

Appellants' second issue, challenging the trial court's dismissal of their civil conspiracy claim, is dependent upon the success of their tortious interference claim. Appellants' argument consists of a single paragraph in

which they simply state that they "do not disagree with the principle of law upon which the trial court relied in reaching its conclusion." Appellants' Brief at 29. See also Pelagatti, 536 A.2d at 1342 ("[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act."). Appellants assert that "in the event this Court vacates the dismissal of their tortious interference claim, then there would be an extant underlying civil cause of action which [the Sirkos] could have conspired to commit." Appellants' Brief at 29-30. Accordingly, because we find no merit to Appellants' claim of tortious interference, no relief is due on their second claim of civil conspiracy.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/25/2018