## Hydrair Inc. v. National Environmental Balancing Bureau

*Allen L. Feingold,* for plaintiffs.

*Alan Sternstein, Carla D. Pratt* and *Jeff Almeida,* for defendants NEBB and Dolim.

*John Widman* and *Chad Wishchuk,* for defendants PEBA and Salkin.

*Melvin Schuster,* for defendants EAB and Roaten.

*Chris Lee,* for defendants Casey, Carlin Management and Reardon.

HERRON, *J.,* April 23, 2001—Defendants National Environmental Balancing Bureau, Pennsylvania Environmental Balancing Association, Eastern Air Balance Inc., Bobby Roaten, Ted Salkin, Patricia Casey, Michael Dolim, Carlin Management and William Reardon filed six sets of preliminary objections to the second amended complaint of plaintiffs Hydrair Inc. and Albert Hawkins. The court sustains the objections in part.

## BACKGROUND

NEBB is a trade association that certifies environmental balancing firms. NEBB's offices are in Gaithersburg, Maryland. Dolim is a former vice-president of NEBB. He has not worked for NEBB since November 30, 1999.

PEBA is the Pennsylvania chapter of NEBB. Carlin Management is the company that PEBA hired to manage its office. Reardon is an owner of Carlin Manage-

ment and secretary or treasurer of PEBA. Casey is a Carlin Management employee who serves as PEBA's office manager. Salkin is chairman of the PEBA technical committee. Roaten is the former president of PEBA.

Environmental balancing firms test and balance heating and air conditioning systems. EAB and Hydrair are Pennsylvania environmental balancing firms and are competitors. Roaten is the president and owner of EAB, and Hawkins is an employee of Hydrair.

Until this year, plaintiffs held a NEBB certification to perform balancing work. The plaintiffs allege that the defendants conspired to revoke the plaintiffs' certification by misrepresenting the quality of the plaintiffs' balancing work to each other and to plaintiffs' customers. Plaintiffs allege that, without the certification, they cannot perform balancing work.

On February 25, 2000, plaintiffs Hydrair and Hawkins filed the original complaint against defendants NEBB, PEBA, EAB and Roaten. On July 27, 2000, the court sustained in part these defendants' preliminary objections to the complaint and granted the plaintiffs leave to file an amended complaint within 20 days. The plaintiffs filed an amended complaint on August 21, 2000— five days late. Defendants filed preliminary objections, including an objection to strike the amended complaint as untimely. Instead of answering the preliminary objections, the plaintiffs filed a second amended complaint. The second amended complaint added Salkin, Casey, Dolim, Carlin Management and Reardon as defendants. The defendants again filed preliminary objections, including a motion to strike the second amended complaint based on the untimeliness of the first amended complaint. The court sustained the objection to untime-

liness and struck the second amended complaint. On motion for reconsideration the court vacated that order.

At issue now are the preliminary objections to the second amended complaint. The second amended complain—which is not a model of clarity—has five counts. Count I asks for an injunction against only NEBB that orders NEBB to restore the certification. Count II claims tortious interference with contractual relations against all defendants. The plaintiffs base this claim on two sets of actions: Roaten and EAB's interference with Hydrair's existing balancing contracts with two school districts and all defendants' participation in decertifying the plaintiffs, such that plaintiffs could not get future balancing contracts. Count III claims fraud against all defendants. Count IV claims defamation against all defendants except NEBB based on derogatory statements about the quality of the plaintiffs' work. Count V claims conspiracy to defame against all defendants except NEBB.

## DISCUSSION

### I. *The Court Overrules the Objections to Plaintiffs' Untimely Amendment of the Complaint*

NEBB objects to the second amended complaint as untimely. The court overrules the objection. In their motion for reconsideration, the plaintiffs set forth just cause for the five-day delay, and the court sees no prejudice accruing to the defendants from the delay. *Peters Creek Sanitary Authority v. Welch,* 545 Pa. 309, 314-15, 681 A.2d 167, 170 (1996).

### II. *The Court Sustains Dolim's Objection to Improper Form of Service*

Dolim objects on the ground of improper service of the second amended complaint and lack of personal ju-

risdiction. The court sustains the objections and quashes service on Dolim.

Under Pennsylvania's Long-Arm Statute, a plaintiff may serve a defendant outside of Pennsylvania by any form of mail addressed to the defendant and requiring a signed receipt. 42 Pa.C.S. §5323(a)(3).[1] The defendant or his authorized agent must sign the return receipt. Pa.R.C.P. 403 and 404(2). The certificate of service that the plaintiffs filed with the prothonotary shows that the plaintiffs sent a copy of the second amended complaint to NEBB in Gaithersburg, Maryland. Attached to the certificate of service are the transmittal letter addressed to Dolim at NEBB and the return receipt addressed only to NEBB, received on October 16, 2000 and bearing the signature of what appears to be "Toni Day." Dolim did not sign the receipt. Without Dolim's signature, service was not proper. Pa.R.C.P. 403.

In their brief, plaintiffs argue that service was proper because they served NEBB and NEBB is Dolim's agent. The court disagrees for two reasons. First, the certificate of service that plaintiffs filed is not sufficient for this court to find that NEBB or Day was Dolim's authorized agent to accept service of process. Pa.R.C.P. 405(b) ("A return of service shall set forth . . . the identity of the person served and any other facts necessary for the court to determine whether proper service has been

_____

1. Plaintiffs do not argue that service was proper under Maryland law. 42 Pa.C.S. §5323(a) ("When the law of this Commonwealth authorizes service of process outside this Commonwealth, the service, when reasonably calculated to give actual notice, may be made . . . (2) In the manner provided or prescribed by the law of the place in which the service is made for service in that place in an action in any of its courts of general jurisdiction.").

made."); *Neff v. Tribune Printing Co.,* 421 Pa. 122, 125, 218 A.2d 756, 757 (1966) (stating that there is no presumption of validity of service of process, and holding service was invalid where, among other things, the return of service did not set forth the agency of the person served). Second, the plaintiffs have admitted that Dolim has not appointed an agent for service of process. In paragraph 26 of his preliminary objections, Dolim alleges that he "has not authorized any person at NEBB's offices or anyone else to accept, receive or sign for service of process on his personal behalf." In violation of Pa.R.C.P. 1029(a) and Phila.Civ.R. *1028 (C)(1), plaintiffs did not specifically admit or deny this factual averment or assert lack of knowledge under Pa.R.C.P. 1029(c). Instead, plaintiffs answered paragraph 26 as follows: "Denied. This allegation avers matters outside the four corners of the complaint and is thus not cognizable by way of preliminary objection." Answer to Dolim's preliminary objections ¶26. The plaintiffs are incorrect in arguing that they need not specifically answer this objection raising outside evidence. The rules specifically provide for the admission of outside evidence to resolve an objection raising issues of fact about improper service. Pa.R.C.P. 1028(c)(2) and note. Had plaintiffs specifically denied paragraph 26 or alleged lack of knowledge, the court might have ordered discovery to resolve the objection. But because plaintiffs did not specifically admit or deny paragraph 26 or assert a lack of knowledge, the court must deem plaintiffs to have admitted that Dolim has not authorized anyone at NEBB to accept service for him. Pa.R.C.P. 1029(b); *Cercone v. Cercone,* 254 Pa. Super. 381, 386, 386 A.2d 1, 4 (1978). Therefore, Day was not Dolim's agent to accept service.

Plaintiffs also argue that service was proper because they served Dolim at his usual place of business. The court disagrees. A plaintiff may serve process by *handing* the complaint at the "office or usual place of business of the defendant to his agent or the person for the time being in charge of the office." See Pa.R.C.P. 402(a)(2)(iii) and 404(1). Because plaintiffs *mailed* a copy of the complaint, the service-by-hand rules do not apply. Pa.R.C.P. 403 governs service by mail. See also, Pa.R.C.P. 404(2). Since that rule contains no provision allowing a person in charge of a defendant's office to sign for the defendant, such service is ineffective. *Weaver v. Martin,* 440 Pa. Super. 185, 193, 655 A.2d 180, 193 (1995) (stating that service of process by mail is allowed only pursuant to the limited procedures under Pa.R.C.P. 403, and holding that service was improper where plaintiff's attempted service by mail did not follow any of those limited procedures).

Plaintiffs did not properly serve Dolim and the court cannot exercise personal jurisdiction over Dolim. *Sharp v. Valley Forge Medical Center and Heart Hospital,* 422 Pa. 124, 127, 221 A.2d 185, 187 (1966) ("The rules relating to service of process must be strictly followed, and jurisdiction of the court over the person of the defendant is dependent upon proper service having been made. . . ."). The court sustains the preliminary objection to improper service and personal jurisdiction. The court will order service of the complaint on Dolim stricken. Should the plaintiffs have the complaint reinstated, they shall serve Dolim in Pennsylvania within 30 days after that reinstatement or outside of Pennsylvania within 90 days after that reinstatement. See Pa.R.C.P. 401 and 404; *Collins v. Park,* 423 Pa. Super.

601, 606, 621 A.2d 996, 999 (1993) (holding that, "[w]here service of process is defective, the proper remedy is to set aside the service[,]" and that plaintiff cannot proceed against defendant until plaintiff effects proper service on the defendant).

Because the lack of effective service deprives the court of personal jurisdiction over Dolim, the court need not now consider Dolim's other arguments regarding lack of personal jurisdiction. Dolim may raise these arguments again should plaintiffs serve Dolim properly.

Dolim also alleges that plaintiffs did not attach copies of all prior pleadings to the process that they attempted to serve on Dolim. Pa.R.C.P. 425(a). The court deems plaintiffs' failure to specifically deny this factual allegation as an admission that they did not attach the pleadings. Pa.R.C.P. 1029(b); *Cercone,* 254 Pa. Super. at 386, 386 A.2d at 4. Though a violation of Pa.R.C.P. 425(a) would not ordinarily warrant striking service, it would warrant an order that plaintiffs serve Dolim with the omitted pleadings. *Almart Stores v. Liberty Shop Ctr.,* 54 D.&C.2d 415, 418 (C.P. Lehigh 1972); *Jacobs v. Brooks,* 69 D.&C.2d 112, 114 (C.P. Somerset 1972); 2 Goodrich-Amram 2d §425(a)(2). Should plaintiffs attempt to serve Dolim again, that service shall include all prior pleadings.

### III. *The Court Overrules NEBB's Preliminary Objection to Count I (Injunction)*

Count I seeks to enjoin NEBB from decertifying plaintiffs. NEBB argues that Count I is insufficiently specific and legally insufficient because Count I does not identify any bylaw, statute or common law that NEBB violated. The court disagrees and overrules the objection.

Count I alleges that defendants' actions in decertifying the plaintiffs were "omissions to do acts which are specifically required to be done under the NEBB bylaws and under the statutory and common law, the requirements of which are incorporated under the NEBB charter and bylaws." Second amended complaint ¶48. The court interprets the "acts which are specifically required . . . under common law" as referring to the tort claims against NEBB in Counts II and III. The claim for tortious interference in Count II, if proven, would support a claim for an injunction. See *Adler, Barish, Daniels, Levin and Creskoff v. Epstein,* 482 Pa. 416, 393 A.2d 1175 (1978) (affirming trial court's order enjoining tortious interference with contractual relations). Therefore, the court must overrule NEBB's objection to Count I.

The court notes, however, that the plaintiffs' claim for an injunction must depend entirely upon their right to relief for tortious interference, for the plaintiffs' claim under the bylaws is not legally sufficient and is insufficiently specific. Count I alleges that the NEBB bylaws give plaintiffs the right to notice of allegations and the right to a full and fair evidentiary hearing, and that NEBB violated these rights.[2] Second amended complaint ¶¶49, 50. In considering this preliminary objection, the court accepts as true the factual allegation that the bylaws state that plaintiffs shall receive notice of allegations and a full and fair evidentiary hearing.[3]

---

2. Though plaintiffs did not attach a copy of the bylaws to their complaint, defendants did not object to this defect.

3. NEBB attached a copy of the bylaws to their March 7, 2000 response to plaintiffs' petition for a preliminary injunction. It is not clear whether the court may consider these bylaws in determining the

*Borden v. Baldwin,* 444 Pa. 577, 281 A.2d 892 (1971). But the court need not accept as true plaintiffs' legal conclusion that these provisions confer legally enforceable rights on the plaintiffs. *Detweiler v. Borough of Hatfield School District,* 376 Pa. 555, 559, 104 A.2d 110, 113 (1954) (though court must accept as true the plaintiff's factual averments as to the contents of a writing, the court is not bound by plaintiff's legal interpretation of these provisions). In their complaint, plaintiffs cite no law giving plaintiffs the right to enforce the bylaws against NEBB. In their brief, plaintiffs do not even discuss Count I. Do plaintiffs base their right to enforce the bylaws on contract law? Do plaintiffs base their claim on tort law? Do they base it on the Maryland General Corporation Law? Md.Code., Corps. & Ass'ns §1-101 et seq. After three rounds of pleading, the court still can only speculate as to plaintiffs' legal theory; and the plaintiffs' failure to attach a copy of the

---

preliminary objections. Compare *Eberhart v. Nationwide Mutual Insurance Co.,* 238 Pa. Super. 558, 563-64, 362 A.2d 1094, 1097 (1976) (holding that court cannot consider writing introduced into record by defendant making preliminary objection unless plaintiff admits the authenticity of the writing) with *Detweiler v. Borough of Hatfield School District,* 376 Pa. 555, 559, 104 A.2d 110, 113 (1954) (holding that, under an exception to the speaking demurrer rule, court may consider writing introduced into record by defendant making preliminary objection if plaintiff bases his claims on the writing) and *Satchell v. Insurance Placement Facility of Pennsylvania,* 241 Pa. Super. 287, 292, 361 A.2d 375, 377 (1976) (same). Even were the court to consider the copy of the bylaws, however, the result would not change, for the bylaws do not expressly set forth the rights to which plaintiffs claim they are entitled. See *Framlau Corp. v. Delaware County,* 223 Pa. Super. 272, 277, 299 A.2d 335, 338 (1972) (holding that, to the extent that a plaintiff's allegations are inconsistent with the writing upon which the plaintiff bases a claim, the writing governs).

bylaws—which defendants produced to plaintiffs during discovery—compounds the court's confusion. Therefore, if plaintiff's tortious interference claim eventually fails, so must its claim for an injunction.

### IV. *The Court Sustains in Part the Preliminary Objections to Count II (Tortious Interference)*

Count II alleges that the defendants tortiously interfered with Hydrair's existing and prospective contractual relations. The defendants object on the grounds of legal insufficiency and insufficient specificity. The court sustains these objections in part.

The elements of a claim for tortious interference with existing or prospective contractual relations are

"(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;

"(2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;

"(3) the absence of privilege or justification on the part of the defendant; and

"(4) the occasioning of actual legal damage as a result of the defendant's conduct." *Strickland v. University of Scranton,* 700 A.2d 979, 985 (Pa. Super. 1997) (citations omitted), quoted in *Flynn Corp. v. Cytometrics,* June 2000, no. 2102, op. at 11 (C.P. Phila. Nov. 17, 2000) (Sheppard, J.). "Absence of privilege or justification" means that the defendant's conduct was "improper." *Cloverleaf Development Inc. v. Horizon Financial F.A.,* 347 Pa. Super. 75, 83-84, 500 A.2d 163, 167 (1985) (citing Restatement (Second) of Torts §767 for six factors to consider when determining whether

defendant's conduct was improper). The plaintiffs must show actual pecuniary loss. *Shiner v. Moriarty,* 706 A.2d 1228, 1238 (Pa. Super. 1998). They cannot recover solely for emotional distress or injury to reputation. *Id.*

## A. Hawkins' Tortious Interference Claims

As did the original complaint, the second amended complaint fails to allege the existence of a contract to which Hawkins was a party or a prospective contract to which he would be a party. Therefore, the court sustains the demurrers of all defendants to Hawkins' tortious interference claim in Count II. *Rutherfoord v. Presbyterian-University Hospital,* 417 Pa. Super. 316, 332, 612 A.2d 500, 507 (1992) (stating that the existence of a contractual relationship between the plaintiff and a third person is an essential element of tortious interference).

## B. Hydrair's Tortious Interference Claims

Hydrair's tortious interference claim is legally sufficient against all defendants except Reardon.

### 1. *Hydrair's claims for tortious interference with existing contractual relations*

Hydrair states a legally sufficient claim against Roaten and EAB for tortious interference with existing contractual relations based on the Hamburg and Kunkle contracts. The complaint identifies contractual relations with third parties: Hamburg and Kunkle school districts. The complaint alleges that Roaten and EAB acted purposefully to harm those relations: they made false statements to the Hamburg and Kunkle school districts in an

effort to take over those jobs. Second amended complaint ¶¶20, 34-36. The complaint alleges that the actions of Roaten and EAB were unprivileged, second amended complaint ¶48, and sufficiently alleges that Roaten and EAB acted improperly: they made false statements to Hamburg and Kunkle. *Birl v. Philadelphia Electric Co.,* 402 Pa. 297, 301, 167 A.2d 472, 474-75 (1960) (allegation that defendant made false statements to plaintiff's employer with purpose and result of inducing employer to terminate plaintiff employee stated legally sufficient claim of intentional interference with contract); *Evans v. Philadelphia Newspapers Inc.,* 411 Pa. Super. 244, 249, 601 A.2d 330, 333 (1991) (stating that plaintiff may base claim of intentional interference on a variety of torts including defamation); see also, Restatement (Second) of Torts, §768, cmt. h (stating that competition is not a defense to intentional interference with an *existing* contract). The complaint alleges actual damage: Roaten and EAB caused Hydrair to be delayed in finishing the Hamburg job and caused Hydrair to lose the Kunkle job. See *Kelly-Springfield Tire Co. v. D'Ambro,* 408 Pa. Super. 301, 308, 596 A.2d 867, 871 (1991) (holding that allegation that defendant's interference caused unnecessary delay in the sale of plaintiff's property to a third party was a sufficient allegation of actual damage).[4]

---

4. The court does not read the second amended complaint as alleging that any defendants except Roaten and EAB induced Kunkle or Hamburg school districts to breach their contracts. See *Hydrair Inc. v. National Environmental Balancing Bureau,* February 2000, no. 2846, op. at 4 (C.P. Phila. July 27, 2000) (Herron, J.) (sustaining preliminary objections to tortious interference claim of original complaint). Like the original complaint, the second amended complaint does not allege that the decertification proceedings interfered with the Hamburg and Kunkle

## 2. *Hydrair's claim for tortious interference with prospective contractual relations*

Hydrair states a legally sufficient claim against all defendants except Reardon for tortious interference with prospective contractual relations. Hydrair does not identify any specific prospective contracts with third parties, but instead alleges that defendants' conduct completely barred Hydrair from doing business in its territory. Second amended complaint ¶46. This is a sufficient allegation that prospective contractual relations existed. Hydrair need not identify specific prospective contracts. See *Kelly-Springfield Tire Co.,* 408 Pa. Super. at 309, 596 A.2d at 871 (holding that plaintiff's complaint was not deficient for failing to identify a specific prospective contractual relation, because "prospective contractual relations are, by definition, not as susceptible of definite, exacting identification as is the case with an existing contract with a specific person").

The complaint alleges specific purposeful actions by NEBB, PEBA, Roaten, EAB, Salkin, Casey, Carlin Management and Dolim to decertify Hydrair. Second amended complaint ¶¶22, 24, 29, 33, 34, 37, 38, 39. The court can reasonably deduce from the complaint that NEBB certification is a requirement for obtaining a balancing contract, see second amended complaint ¶¶46 and 51, and that these defendants would have known that the substantially certain result of decertification would be Hydrair's inability to get balancing contracts.

---

jobs or that Hamburg and Kunkle even knew about the decertification proceedings. If Hydrair does claim tortious interference with existing contractual relations against NEBB, PEBA, Carlin Management, Casey, Dolim, Reardon or Salkin, that claim is legally insufficient and insufficiently specific.

*Field v. Philadelphia Electric Co.,* 388 Pa. Super. 400, 417, 565 A.2d 1170, 1178 (1989) (stating that "intent extends both to the desired consequences and to the consequences substantially certain to follow from the act."); Restatement (Second) of Torts §8A (stating that "intent" means "that the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to result from it."). See also, *B.T.Z. Inc. v. Grove,* 803 F. Supp. 1019, 1023 (M.D. Pa. 1992) (stating that the intent required for a tortious interference claim can be inferred where the result is substantially certain to occur). Therefore, the complaint sufficiently alleges that these defendants "took purposeful action . . . specifically intended . . . to prevent" Hydrair from getting balancing contracts. *Strickland,* 700 A.2d at 985. But the second amended complaint does not allege any specific actions by Reardon. It only alleges that Reardon was the "owner/member" of Carlin Management, that he was "secretary and/or treasurer of PEBA," that he ran "the daily workings of PEBA," that he hired Casey, that he was a co-conspirator and that he caused PEBA's members to vote for Hydrair's decertification. Second amended complaint ¶¶27, 33, 37. Since there are no allegations of specific conduct by Reardon causing plaintiffs' decertification, the tortious interference claim against Reardon is legally insufficient and insufficiently specific.

The complaint specifically alleges that the defendants' actions were not privileged, second amended complaint ¶48, and it alleges sufficient facts such that the court cannot now conclude that the defendants did not act improperly. Second amended complaint ¶¶22, 33, 37,

38, 40. See *Creeger Brick & Bldg. Supply Inc. v. Mid-State Bank & Trust Co.,* 385 Pa. Super. 30, 33, 560 A.2d 151, 152 (1989) ("If there is any doubt as to whether a claim for relief has been stated, the trial court should resolve it in favor of overruling the demurrer.").

The complaint alleges actual damage: the decertification made Hydrair unable to get balancing contracts.

### C. The Demand for Punitive Damages

Roaten, EAB, Carlin Management, Dolim and Casey[5] object to the demand for punitive damages in Count II. A plaintiff may recover punitive damages for tortious interference when the defendant's "actions are of such an outrageous nature as to demonstrate intentional, willful, wanton or reckless conduct . . . ." *SHV Coal Inc. v. Continental Grain Co.,* 526 Pa. 489, 493, 587 A.2d 702, 704 (1991). The complaint alleges intentional acts by Roaten, EAB, Dolim, Casey and Carlin, and the court overrules their objections to the punitive damages demand in Count II.

In summary the court (1) sustains Reardon's objections to Count II; (2) sustains the objections of the NEBB, PEBA, Roaten, EAB, Salkin, Casey, Dolim and Carlin Management to Hawkins' claims in Count II; (3) overrules the objections of NEBB, PEBA, Roaten, EAB, Salkin, Casey, Dolim and Carlin Management to Hydrair's claims in Count II; and (4) overrules the objections of Roaten, EAB, Carlin Management, Dolim and Casey to the demand for punitive damages in Count II.

---

5. Reardon objects to the demands for punitive damages in all counts. Since there is no legally sufficient claim against Reardon, the court does not address these objections.

## V. *The Court Sustains the Defendants' Preliminary Objections to Count III (Fraud)*

Count III alleges that the defendants fraudulently crafted complaints about plaintiffs' work on the Kunkle and Hamburg jobs and other jobs. The defendants argue that Count III is legally insufficient and insufficiently specific. The court agrees. Two of the elements of fraud are a misrepresentation by the defendant and the plaintiff's justifiable reliance on the misrepresentation. *Bortz v. Noon,* 566 Pa. 489, 729 A.2d 555, 560 (1999). As in the original complaint, there is no allegation in the second amended complaint that the defendants made a statement to the plaintiffs on which the plaintiffs relied. Instead, the second amended complaint alleges that the defendants made false statements to others—to Hydrair's customers and to each other—which caused plaintiffs harm. The court sustains the preliminary objections of the defendants to Count III.

## VI. *The Court Sustains in Part the Preliminary Objections to Count IV (Defamation)*

Count IV of the complaint alleges that PEBA, EAB, Roaten, Casey, Dolim, Carlin, Reardon and Salkin defamed the plaintiffs. In the July 27, 2000 opinion addressing the preliminary objections to the original complaint, the court held that plaintiffs had stated a legally sufficient claim for defamation against PEBA, EAB and Roaten.[6] Casey, Dolim, Reardon, Carlin Management and Salkin argue that Count III is legally insufficient

---

6. Roaten and EAB again object to the defamation claim and the court again overrules their objection.

and insufficiently specific. The court sustains the objections in part.

A claim for defamation must generally allege: "(1) the defamatory character of the communication; (2) publication; (3) that the communication refers to the plaintiff; (4) the third party's understanding of the communication's defamatory character; and (5) injury." *Walder v. Lobel,* 339 Pa. Super. 203, 213, 448 A.2d 622, 627 (1985), quoting *Raneri v. DePolo,* 65 Pa. Commw. 183, 186, 441 A.2d 1373, 1375 (1982); 42 Pa.C.S. §8343(a). The complaint must allege with particularity, among other things, the content of the defamatory oral or written statements, the identity of the persons making such statements, and the identity of the persons to whom the statements were made. *Itri v. Lewis,* 281 Pa. Super. 521, 523, 422 A.2d 591, 592 (1980). "A publication is defamatory if it tends to blacken a person's reputation or expose him to public hatred, contempt, or ridicule, or injure him in his business or profession." *Agriss v. Roadway Express Inc.,* 334 Pa. Super. 295, 305, 483 A.2d 456, 461 (1984).

The second amended complaint states a legally sufficient claim for defamation against Casey and Carlin Management. The complaint alleges that Casey wrote NEBB that she had been receiving numerous complaints about plaintiffs for years. This alleged statement supports an action for defamation per se because it could impute that plaintiffs lacked competence in the balancing trade. *Holland v. Flick,* 212 Pa. 201, 61 A. 828 (1905); *Price v. Conway,* 134 Pa. 340, 19 A. 687 (1890); *Zerpol Corp. v. DMP Corp.,* 561 F. Supp. 404, 409-410 (E.D. Pa. 1983). The circumstances in which Casey made these statements—in a letter recommending decertification of plaintiffs based on poor performance—

increases their defamatory nature. The defamation claim against Carlin Management is legally sufficient because the complaint sufficiently alleges that Casey acted within the scope of her authority when writing the letters. Restatement (Second) of Agency §247. Therefore, the court overrules the demurrer and specificity objections of Casey and Carlin Management to Count IV.

Casey and Carlin Management also object to the demand for punitive damages in Count IV. A plaintiff may recover punitive damages for defamation when the defendant acted with actual malice. *Bargerstock v. Washington Greene Community Action Corp.,* 397 Pa. Super. 403, 411, 580 A.2d 361, 366 (1990). Actual malice means that the defendants published the defamatory statement with knowledge that it was false or with reckless disregard of whether it was false. *Id.* The complaint does not allege that Casey wrote the letter with knowledge that her statements in the letter were false or with reckless disregard of whether they were false. Therefore, the court sustains the objection of Casey and Carlin Management to the demand in Count IV for punitive damages.

The second amended complaint does not specifically identify any statements by Dolim or Reardon. It does not identify any statements by Salkin except statements by him to the plaintiffs. Therefore, the court sustains the objections of Dolim, Reardon and Salkin to Count IV. *Itri,* 281 Pa. Super. at 523, 422 A.2d at 592.

VII. *The Court Sustains the Defendants'*
*Preliminary Objections to Count V*
*(Conspiracy To Defame)*

Count V alleges that PEBA, EAB, Roaten, Salkin, Casey, Carlin Management, Reardon and Dolim con-

spired to defame the plaintiffs. To state a cause of action for conspiracy, plaintiffs must allege a combination of two or more persons acting with a common purpose to do an unlawful act by unlawful means or for an unlawful purpose. *Baker v. Rangos,* 229 Pa. Super. 333, 351, 324 A.2d 498, 506 (1974). The second amended complaint alleges that

"At all times material hereto, Roaten, Reardon, Casey, [Salkin], Dolim, Carlin Management, Eastern Air Balance and PEBA acted as the agents, servants, workmen and/or employees of defendant[s] PEBA & NEBB and were then and there acting within the scope of their agency, servitude, work and/or employment, as well as in their capacity as agents, servants and employees for each other." Second amended complaint ¶13.

Accepting this allegation as true, EAB, Roaten, Salkin, Dolim, Casey, Carlin Management and Reardon were agents of PEBA and were, for the purposes of the plaintiffs' conspiracy claim, a single entity. *Perrige v. Horning,* 440 Pa. Super. 31, 43, 654 A.2d 1183, 1189 (1995) (stating that "averments of agency generally are considered as admitted facts for the purposes of demurrer, rather than as conclusions of law"). A single entity cannot conspire with itself. *Rutherfoord v. Presbyterian-University Hospital,* 417 Pa. Super. 316, 333-34, 612 A.2d 500, 508 (1992). Because the plaintiffs do not allege that this single entity conspired with a second person, plaintiffs' conspiracy claim is legally insufficient. *Id.; Baker,* 229 Pa. Super. at 351, 324 A.2d at 506. The court sustains the objections of PEBA, Roaten, EAB, Salkin, Casey, Carlin Management and Reardon to Count V.

## VIII. *The Court Sustains Casey and Carlin's Objection for Failure To Attach a Writing*

All claims against Casey and Carlin Management are based on the letter that Casey sent to NEBB. Casey and Carlin Management object because the plaintiffs did not attach a copy of the letter to the second amended complaint. Pa.R.C.P. 1019 and 1028(a)(2). When a claim is based on a writing, "the pleader shall attach a copy of the writing, or the material part thereof, but if the writing or copy is not accessible to the pleader, it is sufficient so to state, together with the reason, and to set forth the substance in writing." Pa.R.C.P. 1019(i).[7] Plaintiffs did not attach a copy of the letter, and they did not state that they do not have access to the writing. Therefore, the court sustains the objection for failure to conform with Pa.R.C.P. 1019(i).[8]

## CONCLUSION

The court will enter a contemporaneous order sustaining in part the defendants' preliminary objections in accordance with this opinion. As there were dozens of objections by nine defendants to one confusing complaint, the order is lengthy.

---

7. When plaintiffs filed the second amended complaint, former Pa.R.C.P. 1019(h) governed the attachment of writings. That rule, amended effective January 1, 2001, is now located at Pa.R.C.P. 1019(i). Since the language quoted is identical in the new and the old versions of the rule, the court cites to the amended version.

8. Reardon also objects on the ground of failure to attach the letter. Because there is no legally sufficient claim against Reardon, the court does not address that objection.

## ORDER

And now, April 23, 2001, upon consideration of the preliminary objections of all defendants to the complaint and plaintiffs' response, and in accordance with the court's contemporaneously-filed memorandum opinion, the court hereby orders the following:

*Defendant Dolim*

(1) Dolim's preliminary objections based on improper service and lack of personal jurisdiction are sustained.

(2) Service of the complaint on Dolim is stricken.

(3) Should the plaintiffs have the second amended complaint reinstated against Dolim, plaintiffs shall serve Dolim in Pennsylvania within 30 days after reinstatement of the second amended complaint or outside Pennsylvania within 90 days after reinstatement.

(4) Dolim's objections to Hawkins' claim in Count II are sustained.

(5) Dolim's objections to Hydrair's claim in Count II, including the objection to the demand for punitive damages, are overruled.

(6) Dolim's objections to Counts III, IV and V are sustained.

*Defendant NEBB*

(7) NEBB's objection to the second amended complaint based on untimeliness is overruled.

(8) NEBB's objections to Hawkins' claims in Counts I and II are sustained.

(9) NEBB's objections to Hydrair's claim in Counts I and II are overruled.

(10) NEBB's objections to Count III are sustained.

*Defendant PEBA*

(11) PEBA's objections to Hawkins' claims in Count II are sustained.

(12) PEBA's objections to Hydrair's claims in Count II are overruled.

(13) PEBA's objections to Counts III and V are sustained.

*Defendant Salkin*

(14) Salkin's objections to Hawkins' claims in Count II are sustained.

(15) Salkin's objections to Hydrair's claims in Count II are overruled.

(16) Salkin's objections to Counts III, IV and V are sustained.

*Defendants Roaten and EAB*

(17) Roaten and EAB's objections to Hawkins' claims in Count II are sustained.

(18) Roaten and EAB's objections to Hydrair's claims in Count II, including the objection to the demand for punitive damages, are overruled.

(19) Roaten and EAB's objections to Counts III and V are sustained.

(20) Roaten and EAB's objections to Count IV, including the objection to the demand for punitive damages, are overruled.

(21) Roaten and EAB's objection to the plaintiffs' verification is overruled.

*Defendants Casey, Carlin Management and Reardon*

(22) Reardon's preliminary objections to Counts II through V are sustained.

(23) Casey and Carlin Management's objections to Hawkins' claims in Count II are sustained.

(24) Casey and Carlin Management's objections to Hydrair's claims in Count II, including the objection to the demand for punitive damages, are overruled.

(25) Casey and Carlin Management's objections to Counts III and V are sustained.

(26) Casey and Carlin Management's demurrers and specificity objections to Count IV are overruled.

(27) Casey and Carlin Management's objections to the punitive damages claim in Count IV are sustained.

(28) Casey and Carlin Management's objections for failure to attach a writing are sustained.

(29) The plaintiffs shall file a third amended complaint within 20 days of the entry of this order.